AFTER REMAND BY ALABAMA SUPREME COURT
John Edward Hooper was convicted of two counts of second degree rape and was sentenced to five years' imprisonment on each conviction. On original submission of this appeal, this Court reversed those convictions, addressing only two of the nine issues raised. Hooper v. State, 585 So.2d 133 (Ala.Cr.App. 1990). Our decision was reversed by the Alabama Supreme Court.Hooper v. State, 585 So.2d 165 (Ala. 1990). In this opinion on remand from the Alabama Supreme Court, we now address all of the issues raised by the appellant on original submission.
 I.
In Hooper v. State, 585 So.2d 137, 139, the Alabama Supreme Court "changed [the] rule" in this state and held "that a prior inconsistent statement of a witness who takes the stand and is available for cross-examination may be used as substantive *Page 144 
evidence if the prior statement was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."
Therefore, the trial court did not err in instructing the jury that the testimony of the prosecutrix given at the prior trial of the appellant for this same offense could be considered as substantive evidence.
 II.
Our finding, on initial submission, that the evidence was insufficient to sustain the appellant's conviction was based on our application of existing law. We held that "the only evidence incriminating Hooper was the prosecutrix's prior inconsistent testimony and her prior inconsistent statements made to a school counselor, a social worker, and three of her friends." Hooper v. State, 585 So.2d 133, 134 (emphasis omitted). On certiorari review, the Alabama Supreme Court "changed the rule" so that the prosecutrix's prior inconsistent testimony given at the appellant's first trial was admissible as substantive evidence.
At the first trial, the prosecutrix testified that the appellant had sexual intercourse with her when she was 13 years old and that those acts occurred in Escambia County. This prior testimony was admitted into evidence at the appellant's second trial. A conviction for rape may be had on the uncorroborated testimony of the prosecutrix. Boddie v. State, 52 Ala. 395,398-99 (1875). Therefore, the appellant's conviction is supported by the evidence.
 III.
The appellant contends that the trial court abused its discretion in calling the prosecutrix as the court's witness.
Prior to the second trial, the prosecution moved to have the prosecutrix declared hostile and called as a court witness due to the fact that she had recanted her prior testimony incriminating the appellant. The trial court granted that motion and called the prosecutrix as a court witness.
At trial, the prosecutrix was the first witness. She was called by the trial court and the trial judge briefly examined the prosecutrix regarding her name, her age, her date of birth, the age of the appellant (which the prosecutrix did not know), and her denial that the appellant engaged in sexual intercourse with her. The prosecutor was then allowed to cross-examine the prosecutrix.
A trial court, in the exercise of its sound discretion and being careful to maintain an attitude of impartiality, may call a witness as a court witness, may examine such witness, and may permit that witness to be cross-examined by both the prosecution and the defense. Kissic v. State, 266 Ala. 71,74-75, 94 So.2d 202, 205 (1957).
Here, the trial court specifically stated:
 "The court is going to make every effort to ensure that the jury understands that they are not to give any more credence to that witness [the prosecutrix] or take any significance from the fact that the court calls her as a witness in this case. I'm going to do everything I can to prevent them from thinking that I am an arm of the prosecution or the Attorney General's office or any other agency. I want to do everything I can to make [and] maintain a neutral position as best I can and to somehow try to see that whatever evidence needs to come out to get to the truth of the matter comes out. That's the only purpose of this court is to see that the truth is brought out."
The record contains no indication that the trial court did not maintain an attitude and demeanor of impartiality. The record furnishes no reason to believe that the trial court abused its discretion. See Wade v. State, 50 Ala. 164, 166 (1874).
 IV.
State's witnesses S.M. and M.L. were friends of the prosecutrix. Each testified to complaints made by the prosecutrix to them about the appellant's sexual molestation. The trial court refused to allow defense counsel to cross-examine either witness about whether she had been a victim of sexual abuse. Defense counsel made an offer of proof that each witness had been sexually abused by someone other than the *Page 145 
appellant, and argued that each witness was biased against the appellant for that reason. Counsel also argued that the prosecutrix made her complaints to these witness because they had been victims of sexual abuse. The trial court sustained the State's objection and held that "there's got to be more of a direct link to show bias toward this defendant, like something that occurred between them."
"[A] party is given wide latitude on cross-examination to test a witness's partiality, bias, or interest." Perry v.Brakefield, 534 So.2d 602, 608 (Ala. 1988). The rule in this state, notwithstanding the general principle concerning the development of the interest or bias of a witness, is that the range of cross-examination rests largely in the discretion of the trial court and that the court's rulings will not be disturbed unless it clearly appears that the defendant was prejudiced by the rulings. However, "where the witness' testimony is important to the determination of the issues being tried, there is little, if any, discretion in the trial judge to disallow cross-examination on matters which tend to indicate the bias of the witness." Wells v. State, 292 Ala. 256, 258,292 So.2d 471, 473 (1973).
 "It is always competent on cross-examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony. Both our appellate courts have approved the principle stated in 2 Wigmore on Evidence, 2d Ed., § 949, p. 232: 'The range of external circumstances from which probable bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place.' Louisville N.R. v. Martin, 240 Ala. 124, 198 So. 141, 144; [(1940)] Sowell v. State, 30 Ala. App. 18, 199 So. 900. [(1941)] And for emphasis we repeat the oft-stated rule that the latitude and extent of such cross-examination is a matter which of necessity rests largely within the sound judicial discretion, which will not be revised on appeal except in extreme cases of abuse. Such cross-examination may even pertain to irrelevant and immaterial matters as bearing on the memory, accuracy, credibility, interest or sincerity of the witness."
Housing Authority of City of Decatur v. Decatur Land Co.,258 Ala. 607, 612, 64 So.2d 594, 598 (1953). " '[T]he extent to which a witness may properly be cross examined as to collateral circumstances for the purpose of showing bias depends in some instances upon the importance of his testimony, and especially upon whether such testimony is of a nature to be seriously affected by prejudice, bias, or hostility.' " Louisville N.R.v. Martin, 240 Ala. 124, 131, 198 So. 141, 147 (1940) (emphasis in original). "[I]t is an abuse of discretion and a violation of constitutional rights to deny to a defendant the right to cross-examine a witness at all on a 'subject matter relevant to the witness's credibility', such as the witness's possible motive for testifying falsely." United States v. Brown,546 F.2d 166, 169 (5th Cir. 1977). See Stinson v. State,41 Ala. App. 575, 576, 142 So.2d 897, 898, cert. stricken, 273 Ala. 479, 142 So.2d 899 (1962) (State properly allowed to cross-examine wife, who testified for defendant-husband, as to whether she had previously been convicted for same offense of which defendant stood accused.). "We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' Davis v. Alaska, [415 U.S. 308, 318,94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974)]." Delaware v. Van Arsdall,475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).
We find that the trial court erred, at least with regard to S.M., in not allowing defense counsel to cross-examine that witness about whether she had ever been sexually abused. The fact that a prosecution witness has been a victim of sexual abuse is a matter which may tend to bias that *Page 146 
witness against a defendant charged with the rape of his daughter. We find this conclusion inescapable in light of the fact that two veniremembers were excused for cause based on their admitted prejudice caused by the facts that one veniremember had been raped and the minor daughter of another member had been raped.
In qualifying the jury venire, the trial court asked, "Have you been or has any member of your family ever been the victim of rape or any sexual abuse?" Two veniremembers indicated that they had been sexually abused and that their experience either would or might influence their verdict. The trial court granted the appellant's challenge for cause, without objection from the prosecution, to these two veniremembers.
However, under the circumstances of this case, we find that that same error was harmless because the fact that the prosecutrix made complaints to her two friends was corroborated by other witnesses, and because other witnesses testified to the fact that the prosecutrix had made complaints to them.
The prosecutrix admitted to having made complaints to T.T. and M.L., but denied ever discussing the matter with S.M. Sixteen year old T.T. testified that on several occasions, the prosecutrix told her that the appellant had sexually abused her. Mrs. Carol Middleton, a guidance counselor at the school the prosecutrix attended, testified that she talked to T.T., M.L., and the prosecutrix together in her office, and at that time the prosecutrix stated that she had been sexually abused by the appellant. Ms. Amelia Davis, a licensed social worker, testified that the prosecutrix told her that she had been sexually abused by the appellant. Ms. Davis also testified that the prosecutrix told her that she had told S.M., M.L., and T.T. that she had been sexually abused by the appellant. Clinical psychologist James F. Chudy testified that the prosecutrix told him that she had been sexually abused by the appellant. Dr. Jimmy Adkisson, a physician who examined the prosecutrix, testified that the prosecutrix gave him a history of sexual abuse.
Furthermore, a close reading of the trial testimony of S.M. reveals that she indicated that she had been sexually abused. Although the trial court sustained the State's objection, Ms. M. did testify that it was not the appellant that molested her. In addition, the prosecutrix testified, on cross-examination by defense counsel, that Ms. M. told her that she had been sexually abused by her uncle.
The prosecutor represented to the court that M.L. denied ever being sexually abused.
Although we are extremely reluctant to hold that any improper limitation of cross-examination constitutes harmless error, we are convinced beyond any reasonable doubt that the error in this case did not contribute to the verdict of the jury. SeeChapman v. California, 386 U.S. 18, 87 S.Ct. 824,17 L.Ed.2d 705 (1967). Violations of the confrontation clause of the Sixth Amendment are subject to harmless error analysis. Delaware v.Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674
(1986).
 "[W]e hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824], harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. Those factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."
Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. *Page 147 
Here, the testimony of S.M. and M.L. was not that significant in consideration of the fact that other witnesses testified that the prosecutrix had told them that she had been sexually abused by the appellant, and the fact that the prosecutrix did complain to both witnesses was corroborated by other witnesses. Other than with regard to the past sexual abuse, defense counsel was allowed a thorough and sifting cross-examination of witnesses S.M. and M.L. Finally, despite the fact that the prosecutrix recanted her prior testimony incriminating the appellant, the strength of the State's case is impressive.
For these reasons, we find that the improper infringement of the appellant's right of cross-examination constitutes harmless error.
 V.
On cross-examination of the prosecutrix, who was called as the court's witness, the State elicited her prior testimony that, when she was 13 years old, the appellant had sexual intercourse with her on September 6, 1984, and December 13, 1984, the dates specifically averred in the indictment. In addition, the prosecutor elicited the prosecutrix's prior testimony that the appellant had been sexually abusing her since she was "[a]bout five. Between five and seven [years old]" when the appellant "put his hands on the private parts of [her] body." The prosecutrix also testified that "[a]bout seven he started trying . . . to penetrate me but until I was nine he couldn't." She stated that after the age of nine, the appellant had sexual intercourse with her "about every week," and when she was 12 or 13 "it increased more." She stated that at the time of those two incidents she was 13 years old. The appellant argues that this additional testimony constitutes inadmissible evidence of collateral criminal acts not charged in the indictment.
We hold that this testimony of the prior sexual misconduct between the appellant and the prosecutrix was properly admitted into evidence.
 "[W]here . . . a defendant is charged with the first degree rape of his minor daughter, evidence establishing that he had raped and/or committed acts of sexual abuse toward her prior to or subsequent to the offense for which he is charged, is admissible to prove his motive in committing the charged offense. Such evidence tends to establish the inducement (i.e., unnatural sexual passion for his child) that led him to rape or molest her."
Bowden v. State, 538 So.2d 1226, 1235 (Ala. 1988) (emphasis in original).
 VI.
The appellant was first tried and convicted in September 1985. That conviction was reversed because of the prosecutor's improper cross-examination of character witnesses for the appellant. Hooper v. State, 523 So.2d 469 (Ala.Cr.App. 1986). The appellant was retried and convicted in September of 1988. The appellant argues that, at his second trial, the trial court erred in allowing the prosecution to impeach the prosecutrix with her prior inconsistent answer to the question, "Have you ever had oral sex with your father?" without establishing a proper predicate.
At the second trial, on cross-examination of the prosecutrix by the prosecutor, the following occurred, and, for the first time during the course of the trial, defense counsel objected on the ground of improper predicate for impeachment:
 "Q. Now, let me ask you this, K__________, today. You don't have to look at the record. Have you ever had oral sex with your father?
"A. No, sir.
 "Q. Look at page R-82 of the record [of her testimony at the first trial]. Mr. Rebarchek [the prosecutor at the first trial] says, —
 "MR. HARDEN [defense counsel]: Judge, I'm going to object. He's not laying the proper predicate to elicit prior inconsistent statements.
"THE COURT: You want to elaborate?
"MR. HARDEN: Yes, sir.
 There's a certain procedure that Mr. Valeska [the district attorney] has got to go through in order to elicit — He cannot *Page 148 
just start reading from the transcript. He's been doing that throughout this trial, Judge.
 "MR. VALESKA: I asked her about it, if she ever had oral sex with him. She answered, not from the transcript, she answered no. Then I called her to the transcript.
 "MR. HARDEN: It's not proper. It's not a proper foundation laid for eliciting impeachment testimony from a prior inconsistent statement.
"THE COURT: I overrule the objection.
"MR. HARDEN: We except.
"(MR. VALESKA): Go to page R-82, K__________.
"A. Yes, sir.
"Q. Question: 'When did you see that?'
"A. 'When he had oral sex with me.'
 "Q. Question: 'Could you describe it for us, please?'
 "A. 'White syrupy liquid that came out of his penis.'
 "Q. (MR. VALESKA): Question: 'Did you ever get any of that on you?'
 "MR. HARDIN: We are going to move for a mistrial on the grounds that he has elicited testimony of an impeachment nature without laying proper predicate for impeachment. It's prejudicial. It has come in over proper objection. We move for a mistrial.
 "THE COURT: Okay. Would counsel approach the bench."
Immediately after this exchange, the trial recessed for lunch. Upon return, the trial court stated:
 "The defense prior to breaking for the noon hour made an objection which the court did not rule upon. The court has considered it during the noon hour. The court is going to sustain the objection as made by the defense regarding the method of impeaching this witness."
Defense counsel did not request that the prior testimony of the prosecutrix or the prosecutor's questions be stricken or that the jury be instructed to disregard.
"To impeach a witness with a prior inconsistent statement, counsel must ask [the witness] specifically about the statement at issue, with reference to the time and place at which he allegedly made it and the person to whom it was made, and give [the witness] an opportunity to admit or to deny having made it." Perry v. Brakefield, 534 So.2d 602, 606 (Ala. 1988); accord, C. Gamble, McElroy's Alabama Evidence § 157.01 (3d ed. 1977). However, "perfect precision in the predicate question with respect either to the content of the supposed statement, the time when, the place where, or the person to whom made [is not required]. The rule is not ironclad and perfection is not required." McElroy's § 157.01(3) (footnotes omitted).
While the district attorney did not establish the predicate he should have established before impeaching the prosecutrix with her prior testimony, we consider that error harmless under the facts of this case. Everyone, including the prosecutrix, understood that the district attorney was using the prior testimony given by the prosecutrix to impeach her testimony. It was undisputed, even before the prosecutrix took the witness stand, that she was going to recant her prior testimony and deny that the appellant had ever sexually abused her. At the very beginning of his cross-examination of the prosecutrix, the district attorney established that she remembered testifying under oath "in this courtroom back in 1985." The district attorney handed the prosecutrix "a copy of your testimony back in 1985" and asked her to "take a minute and look at it." Then the district attorney cross-examined the prosecutrix for 60 pages in the transcript before defense counsel objected on the ground that there was no proper predicate being laid. While these facts do not justify the prosecutor's disregard of the rule requiring a proper predicate for impeachment, it certainly renders that error harmless in this case. A consideration of the reason for the rule reveals that there was no unfairness to the prosecutrix-witness in this case.
 "The basic reason for the requirement that the predicate question specify time, place, content of the supposed statement, and the person to whom made, is to enable the faculties of the mind of the witness to be put in motion and his memory *Page 149 
aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject matter under inquiry and thereby be aided in recalling to memory whether he made the statement; and, if he recalls making it, to give his explanation of the apparent conflict between his testimony and such prior statement."
McElroy's § 157.01(2).
 VII.
The appellant argues that he was prejudiced by the admission of three XXX-rated video tapes, which were admitted for identification purposes only, where the State failed to show that the contents of the tapes were in substantially the same condition as at the time they were viewed by the appellant and the prosecutrix, and where the State failed to establish a proper and continuous chain of custody of the video tapes.
The prosecutor elicited the prosecutrix's prior testimony that she had watched X-rated films depicting "very, very explicit sex"; that she watched these films with the appellant in the appellant's bedroom; that the appellant told her that if she ever ran away, she would have to do things like those that appeared in one of the films about a girl who ran away and was raped; and that after they watched the films, she and the appellant "usually had sex."
State's exhibits 1A and 1B, 2A and 2B, and 3A and 3B are the video tape containers and the actual pornographic video tapes. At trial, the prosecutrix admitted that she had watched videos 2B and 3B by herself, and the prosecutor elicited her prior testimony that she had watched the three videos with her father. The prosecutor also elicited the prosecutrix's prior testimony that the appellant told her the videos came from Don Champion who put in their satellite dish.
State's witness Donald Champion identified the three videos as being ones he had owned. He testified that he had watched "parts" of each tape. To the best of his memory, he lent tape 1B to the appellant, and testified that it was "very possible" he had lent tape 2B to the appellant, although he was not certain. He testified that he did lend three X-rated tapes to the appellant while he was a state trooper in Evergreen, around the time he sold a satellite system to the appellant in March 1984. As best Champion could remember, those three tapes were among the seven or eight tapes he gave to Alabama State Trooper Captain L.N. Hagan. He did not know if the appellant made any changes or alterations to the tapes.
Captain Hagan testified that he obtained seven video tapes from Champion in January 1985, and that the three videos marked for identification at trial contained material which the prosecutrix had described to him as having seen on videos at her house with the appellant.
The appellant testified in his own defense at trial. He admitted that he got three video tape recordings from Champion and that he took them to his residence. However, he testified that he watched only about 15 or 20 minutes of one tape before he discovered the pornographic nature of the tapes, that he did not view any tape with his daughter, the prosecutrix, and that he returned the tapes to Champion.
Although marked for identification, the video tapes and their containers were never admitted into evidence. Although several witnesses described the contents of various limited portions of the tapes, the contents of those tapes were not viewed by the jury.
" '[A] proper foundation laid for the accuracy of what the [video tape] portrays obviates the need to establish a chain of custody to demonstrate its authenticity.' " Molina v. State,533 So.2d 701, 712 (Ala.Cr.App. 1988), cert. denied,489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989). Since the contents of the video tapes were not observed by the jury and the video tapes themselves were not introduced into evidence, the error in the failure of the prosecution to lay a proper predicate for the admission of those tapes does not constitute a ground for reversal of his conviction. *Page 150 
 VIII.
The appellant argues that he was denied a fair trial because of the admission of the evidence of the pornographic video tape recordings.
In a single indictment the appellant was charged with two counts of the second degree rape of his daughter. Count One charged that the sexual intercourse occurred "on or about September 7, 1984. Count two charged that the sexual intercourse occurred "on or about December 13, 1984." In Part V of this opinion, this Court upholds the admissibility of the prior testimony of the prosecutrix that the appellant had sexually abused her since she was five years old and had had sexual intercourse with her since she was nine years old.
The prosecutor elicited the former testimony of the prosecutrix that "sometime" during the summer of 1984 she and the appellant watched the pornographic video films in the bedroom of her parents' residence in Atmore, Alabama. According to the prosecutrix's prior testimony, the appellant told her that "if [she] ever run away there was a film about a girl who run away. He told [her that she would] have to do things like that. * * * These men were making her have sex with them." According to the prosecutrix, these films portrayed "very, very explicit sex. * * * Just mostly that people were having sex, really. * * * The girl that ran away and the men had picked her up off the street and took her and made her have sex with them. And one of them was a real short guy who was having sex with this lady. And one of them was like a TV show, were on TV or something." In one of the films, a man in a dress "put whipped cream on [a woman's] breasts and licked it off. And she put the whipped cream on his penis * * * [and] she licked the whip cream off of his penis." The prosecutrix testified that afterthey watched these films, they "usually had sex." She stated that she and the appellant did "not very often" watch the films.
There is no doubt that the admission of the evidence that the appellant had pornographic video tape recordings in his possession was prejudicial to his case. However, that evidence was admissible and was properly presented as a part of the State's case in chief. "If the accused's commission of another crime is admissible in a present prosecution, the State may prove in meticulous detail the manner in which the accused committed such other crime." McElroy's § 69.02(8). In our opinion, the probative value of the evidence of the pornographic video tape recordings and the fact that they were in the appellant's possession linked the appellant to the crimes charged and outweighed the probable prejudicial impact upon the jury of those tapes.
 IX.
The appellant complains that the prosecutor cross-examined the prosecutrix in such a manner as to imply the existence of a factual predicate which was not supported by the evidence.
From the record:
 "Q. [prosecutor] Approximately in February of 1986, did you have a phone conversation with your father when Lynn Manz was present or listening in?
"A. [prosecutrix] No, sir.
 "Q. All right. In that conversation in approximately February, 1986, with Lynn Manz listening either on the intercom, which you punched in yourself for them to hear it, or her listening on another phone, did you say to your father these words or these words in substance: 'Daddy why did you do that'; and his response to you was: 'K__________, you made me do it. You wanted it as much as I did.'
"A. No, sir.
 "MR. HARDEN: Judge, if it please the Court, I am going to object unless he lays the proper foundation to show whether she had knowledge whether somebody was listening in.
 "MR. VALESKA: We are going to call those witnesses. I just had to lay the predicate.
"MR. HARDEN: We object to this witness testifying. *Page 151 
 "THE COURT: I overrule the objection. I believe she has already answered.
"MR. HARDEN: We except."
The prosecutor did not pursue this line of cross-examination with the prosecutrix. However, Lynn Manz was not called as a witness and did not testify at the appellant's trial.
Initially, we note, as did the trial court, that defense counsel made his objection only after the prosecutrix had answered the question. "[O]bjection to a question must be made as soon as a question is stated, unless its inadmissibility is due not to the subject of the question but something contained in the answer." Willingham v. State, 261 Ala. 454, 458,74 So.2d 241, 244 (1954).
" ' "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by the evidence." ' " Gillespie v.State, 549 So.2d 640, 644 (Ala.Cr.App. 1989); accord, Wysingerv. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983). "Where the prosecutor insinuates the existence of a fact which the witness denies, the prosecution 'may have a duty to complete its impeachment of the witness or show that the prosecutor had "evidence of or reasonable ground to believe the truth of its implication." ' " Gillespie, 549 So.2d at 647. Cf. Ex partePeagler, 516 So.2d 1369, 1371 (Ala. 1987) (" 'When a witness denies that he has been convicted of the crime, it becomes incumbent upon the impeaching party to prove the conviction.' ").
To the extent to which this was an attempt by the prosecutor to get before the jury evidence for which he had no basis, it must be condemned. However, there appears to have been some basis at least for a similar statement. Prosecution witness Sally E. "Betsy" Aust testified that she was employed as a house parent of a residential mental health care facility called Turning Point. On January 22, 1986, she overheard a telephone conversation between the appellant and the prosecutrix. She testified:
 "To the best of my memory [the prosecutrix] said, 'You realize why I can't go home; why I'm not being allowed to go home.' She hit the [microphone] button and his voice came over saying, 'I said I wouldn't do that again.' And she hit the mike button off and replied again, 'You've said that before.' That's the best of my memory what."
Ms. Aust testified that she thought there was another staff person present who overheard this conversation but she could not identify that person. The prosecutor elicited the prior testimony of the prosecutrix that her "parents had made me feel that it was my fault that all this had happened."
Furthermore, in our review of the record we have not found that the specific objection to the prosecutor's question now raised on appeal was presented to the trial court. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parte Frith, 526 So.2d 880,882 (Ala. 1987).
At the time the prosecutor asked the question, the trial court acted within its discretion in overruling defense counsel's objection:
 "When the admissibility of a particular item of evidence hinges upon proof of other facts, the court may, in its discretion, allow the evidence upon the proponent's promise to 'connect it up.' C. Gamble, McElroy's Alabama Evidence § 13.01 (3d ed. 1977). If the promised proof is not later presented, however, the party objecting to the introduction of the evidence should move for its exclusion. Henry v. Frohlichstein, 149 Ala. 330, 43 So. 126 (1907); E. Cleary, McCormick on Evidence
§ 58 (2d ed. 1972)."
Donahoo v. State, 505 So.2d 1067, 1072 (Ala.Cr.App. 1986).
Here, defense counsel never objected on the ground that the prosecutor could not prove or had no factual basis for his question. Although the prosecutor stated that he was "going to call those witnesses," defense counsel never moved to have the testimony of the prosecutrix stricken. *Page 152 
Therefore, this specific issue was not preserved for review on appeal.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.