The appellant, Reverend Homer Smith, was convicted of rape in the first degree, a violation of § 13A-6-61, Code of Alabama 1975, for the rape of his stepdaughter, a minor. He was sentenced to 15 years' imprisonment.
The appellant presents two issues on appeal. *Page 435 
 I
The appellant contends that the guilty verdict was contrary to the great weight of the evidence.
The state's evidence tended to show that on April 30, 1990, the victim, D.B., reported to the Pickens County Sheriff's Department that she had been repeatedly sexually molested by her stepfather, the appellant Reverend Homer Smith, since 1982 and repeatedly raped by him numerous times since approximately 1985.
The victim testified that she was asked by her mother to sleep in the same bed with the appellant, sometime in March 1982. Her mother and her newborn baby were then to spend the night in the victim's room, which contained the only heater in the house. During the night, she said, the appellant woke the victim, then 7 years old, removed her clothes and inserted his finger in her vagina. After continuing to molest her for about 30 minutes, the appellant kissed the victim and told her not to tell anyone. Such behavior, she testified, continued.
The appellant did not force his stepdaughter to have intercourse with him until she was 10 or 11 years old, according to her testimony. She testified that he drove the car they were in onto a side road, undressed her against her will, and forced her to have sexual intercourse with him. Afterwards, he told the victim that if she told anyone, he would kill her and her mother. From that point on, the appellant forced the victim to engage in sexual intercourse "anytime he had the chance to do it." Each time, the victim submitted "[b]ecause he made [her] and he threatened [her] and [she] had no choice."
D.B. testified that the final incident between the appellant and her occurred one night in December 1988 when she was 14. The appellant and the victim were riding in his truck when he drove onto a side road and stopped. The victim attempted to flee, but the appellant caught her and forced her back into the truck. He then drew a gun from behind the driver's seat and told her that if she told anyone, he would kill her and her mother. After ordering the victim to remove her clothes, the appellant held her down with one hand, removed his pants with the other, and had intercourse with her. He then repeated his threat to kill her if she told anyone.
On appeal, the appellant contends that the guilty verdict was contrary to the great weight of the evidence. His basic position appears to be that it is the victim's word against his. He recites evidence or alleges gaps in the evidence at the trial, which, he contends, support his plea of not guilty. He contends that the only evidence against him is the uncorroborated testimony of the victim. He produced three of his blood relatives as witnesses, all of whom testified that they knew the reputation of D.B. for untruthfulness in the community and that her reputation was bad. The appellant contends that the victim made up the rape story for purposes of revenge. He contends that the victim disliked him because of the strict rules he imposed. He testified that he is a Reverend of the True Holiness Church and is strict on his family. He also testified that he had found the victim in bed with her boyfriend. On appeal he contends that other evidence supported his contention that she was lying: that the victim had tried to run away from home several times; that she had told several people that she wanted to leave home because she was tired of putting up with her six younger siblings; and that she only reported him to the sheriff's department when she feared she was pregnant.
The appellant says that the victim told a friend and her natural father that he had raped her before telling the sheriff's personnel. He finds significance in the fact that the state did not present their testimony to the jury. He finally contends that there was no evidence of blood from a ruptured hymen.
On appeal, the appellant questions the weight and credibility of the evidence. As Judge Bowen stated in Johnson v. State,555 So.2d 818 (Ala.Cr.App. 1989):
 "The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the *Page 436 
evidence concerns the question of whether, 'viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt.'
". . . .
 "In contrast, '[t]he "weight of the evidence" refers to a "a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other. . . ." ' We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial."
555 So.2d at 819-20. (Citations omitted.) Tibbs v. Florida,457 U.S. 31, 37-38, 102 S.Ct. 2211, 2216, 72 L.Ed.2d 652 (1982);R.B.N. v. State, 600 So.2d 409, 410 (Ala.Cr.App. 1992). Furthermore, any conflicts in the evidence present a question for the jury to resolve. Curry v. State, 601 So.2d 157
(Ala.Cr.App. 1992); Morgan v. State, 589 So.2d 1315
(Ala.Cr.App. 1991). A rape conviction may be based solely on the victim's uncorroborated testimony. Hooper v. State,585 So.2d 142 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___,112 S.Ct. 1295, 117 L.Ed.2d 517 (1992); Jones v. State,580 So.2d 97 (Ala.Cr.App. 1991); Barnes v. State, 580 So.2d 77
(Ala.Cr.App. 1991).
This court is not "jury number two." It is not the business of this court to second-guess juries. We hold that the jury's verdict was not contrary to the great weight of the evidence. See, e.g., Hooper, supra.
 II
The appellant also contends that the circuit court erred when it received into evidence testimony from a social worker and the deputy sheriff who, on April 30, 1990, approximately a year and three months after the last rape allegedly occurred, concurrently received the victim's detailed complaint regarding the incidents in question. He argues that their testimony, which was essentially the same as D.B.'s, was hearsay, was repetitive, and was used solely to bolster the credibility of the victim.
The details of a complaint made by a rape victim cannot be elicited by the prosecution, especially when the complaint is not made within a reasonable time after the alleged occurrence. C. Gamble, McElroy's Alabama Evidence § 178.01 (4th ed. 1991). However, "where the testimony of the prosecutrix is impeached by proof of self-contradictory statements, . . . the prosecution may prove her complaints in detail." McElroy's, supra. See, e.g., Lee v. State, 565 So.2d 1153 (Ala. 1989);Inmon v. State, 585 So.2d 261 (Ala.Cr.App. 1991); Parker v.State, 581 So.2d 1211 (Ala.Cr.App. 1990), writ denied,581 So.2d 1216 (Ala. 1991).
Here, the appellant, not the prosecution, offered the victim's written complaint into evidence and used it during his cross-examination of the victim in an attempt to impeach her recollection of the incidents. In order to rehabilitate the victim's testimony through proof of her prior consistent statements, the state elicited the testimony of the social worker and the deputy sheriff, who listened to the complaint and wrote it down. The circuit court did not err in allowing this testimony into evidence. See, Lee, supra; Inmon, supra.
For the foregoing reasons the judgment in this case is due to be affirmed.
AFFIRMED.
All the Judges concur.