Charles King was indicted by a Madison County grand jury on two counts of first-degree sexual abuse for having sexual contact with his step-granddaughter, who was six years old at the time of the incidents. § 13A-6-66, Ala. Code 1975. He was convicted of both charges following a jury trial, and the trial court imposed 10-year concurrent sentences. The trial court also ordered King to pay a $2,500 fine for each count, $500 to the Crime Victims Compensation Fund for each count, court costs, and restitution. This appeal follows.
The evidence at trial tended to show the following. King had been married to Ruth, the victim's grandmother, for approximately 10 years. Ruth's daughter is the mother of the victim, E.M.E.M. and her younger brother visited with the Kings at their home once or twice each week. On an afternoon in May 2002, near the end of her first-grade school year, E.M. was sitting on a couch at home with her mother. E.M. suddenly began crying and told her mother that Grandpa[1] was always kissing and touching her and he pulled his pants down in front of her. E.M. told her mother she was afraid that she would go to jail, and she asked her mother not to tell anyone. E.M. said the devil made Grandpa do these things. E.M.'s mother contacted the police. E.M.'s mother testified that E.M. had expressed feelings of shame and guilt, and that E.M. believed she had done a "bad thing." (R. 128.)
E.M. testified at trial. She stated that King had touched her "private parts," where she goes to the bathroom. (R. 137-38.) E.M. testified that she had touched King's private part and "his titties." (R. 139.) These touchings occurred at King's house when she was in the first grade, she said.
Lucy McLean testified that she was an investigative interviewer employed by the Children's Advocacy Center and was working under contract to the Department of Human Resources. She investigated cases of alleged child sexual abuse. She testified about her education and experience and about the guidelines for conducting a forensic interview. McLean conducted a forensic interview of E.M. and determined that a more extensive evaluation was required. She made a referral for a forensic evaluation. The videotape of McLean's interview with E.M. was played for the jury.
Denise Houston met with E.M. while Houston was employed at the National Children's Advocacy Center. She testified at length about her education and work experience as a forensic evaluator, therapist, and trainer. She also testified as to the way she conducts a forensic evaluation of a child suspected of being abused. Specifically, she noted that the evaluation is conducted during the course of several sessions, with the initial sessions devoted to gathering general information from the parent and the child and to building rapport. Houston testified about the sessions she conducted with E.M.'s mother and with E.M.
Houston described E.M. as being distressed and reluctant to speak about what King had done, other than to tell Houston that "Grandpa broke a big rule," and that Grandpa made her "do something." (R. 186.) Later in the session, E.M. told Houston that King had forced her to touch "his weiner" or his "private spot" and that *Page 1035 
it got bigger when she touched it. (R. 191-93.) She said that she had seen her little brother's "weiner" when he was in the bathroom, and that King's "weiner" was bigger and wetter, and that it left "nasty, smelly stuff" on her hands. (R. 195.) E.M. further testified that King kissed her on the lips and put his tongue in her mouth, and that he made her put her mouth and tongue on his stomach and "titties." (R. 197.) Houston testified that E.M.'s statements were consistent with a victim of child sexual abuse.
Dr. Deborah Williams testified that she conducted a physical examination of E.M. The results of the examination were normal, and the doctor detected no problems with E.M.'s hymen or her genital or rectal areas.
George Johnson, an investigator with the Madison County Sheriff's Department, testified that he interviewed King after he saw the videotape of the forensic interview conducted by Lucy McLean. King was 67 years old at the time of the interview. He told the investigator that he had not had sex in a while due to some problems he had. King told him that E.M. was affectionate and liked to kiss everyone. King also stated that E.M. had walked into the bathroom and bedroom on more than one occasion and had seen him naked. He said E.M. had done this at other people's houses, too. King took three polygraph examinations; the results of the tests were inconclusive.
Ruth King, the victim's maternal grandmother, testified that she was married to King when the sexual abuse took place, but that she never saw King touch E.M. inappropriately. She stated that E.M. enjoyed being around King and that she expressed love for him. She said that she once found E.M. in the bathroom while King was in the shower. Ruth testified that the glass shower door was closed, but that King's naked body was visible through the door. Finally, she testified that, for the duration of their marriage, King was capable having erections and ejaculating, and that she had observed him with erections during 2001 and 2002.
King testified on his own behalf. He denied doing any of the things E.M. alleged he had done. King testified that he retired from the military as a lieutenant colonel with many commendations and awards. He married Ruth in 1990 and they divorced after E.M. made the allegations of sexual abuse. He acknowledged that E.M. and her brother got under the covers with him and Ruth for a few minutes in the morning on the days the children stayed at the Kings' house, but he said that he and E.M. just cuddled. When defense counsel asked King whether he had ever put his tongue on E.M., as some of the testimony had indicated, King responded, "No, sir, not that I can recall." (R. 294.) On cross-examination, in response to the prosecutor's question about whether he had ever kissed E.M. with an open mouth, King stated, "Not that I can recall, but I've —". (R. 323.) King testified that, on the morning E.M. was in the bathroom while he was in the shower, the water was running and he did not know E.M. had come into the bathroom. He knew only that Ruth yelled at E.M. for being in the bathroom and took her out.
King testified that he injured his groin in 1996 when he fell through rotten porch timbers and landed straddling a joist. He did not seek medical treatment at the time, but testified that he believed that the injury diminished his erectile functioning. In 1999 he asked his physician for a test to measure his testosterone level, and in 2003 he consulted a urologist regarding his erectile difficulties. He stated that, in 2001 and 2002, he could not have an erection and he could not ejaculate, although he *Page 1036 
said that he attempted to masturbate a few times each week.
 I.
King first argues that § 15-25-31 et seq., Ala. Code 1975, the Child Sexual Abuse Victim Protection Act, is unconstitutional because it violates his right to confrontation and the Supreme Court's recent interpretation of that right, as set forth inCrawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177 (2004). He also argues that the trial court erred to reversal when it permitted the State to introduce hearsay statements from the victim; he claims that Crawford precludes the admission of all hearsay statements unless a defendant was afforded the opportunity to cross-examine the witness at the time the out-of-court statements were made. King preserved these arguments for review by filing a pretrial motion to declare the statute unconstitutional and a pretrial motion in limine to prevent the State from introducing any hearsay statements. (C. 102-105.) King also objected at trial when the hearsay statements were offered. At the pretrial hearing on the motions, the State argued that, because the victim would testify at trial and would be available for cross-examination, King's right of confrontation was protected and Crawford did not apply. The trial court denied King's pretrial motions and his objections to the hearsay evidence offered during the trial. We agree with the State; the trial court's rulings were correct.
In Crawford v. Washington, the United States Supreme Court held that the Sixth Amendment's Confrontation Clause precludes the admission of testimonial hearsay evidence where the witness is unavailable to testify and the defendant has not had a prior opportunity for cross-examination. 541 U.S. at 68,124 S.Ct. 1354. The Supreme Court clearly stated that the Confrontation Clause provides no bar to the admission of hearsay statements when the hearsay declarant testifies at trial:
 "Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. See California v. Green, 399 U.S. 149, 162 (1970). It is therefore irrelevant that the reliability of some out-of-court statements `"cannot be replicated, even if the declarant testifies to the same matters in court."' Post, at 74 (quoting United States v. Inadi, 475 U.S. 387, 390 (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See Tennessee v. Street, 471 U.S. 409, 414 (1985).)"
541 U.S. at 59 n. 9, 124 S.Ct. 1354.
The victim's hearsay statements to which King now objects were introduced during the testimony of the two child advocacy workers. Alabama law authorizes the admission of an out-of-court statement made by a child under the age of 12 under certain circumstances. Specifically, § 15-25-31, Ala. Code 1975, provides:
 "An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met."
Section 15-25-32(1), Ala. Code 1975, provides that an out-of-court statement may *Page 1037 
be admitted as provided in § 15-25-31 if the child testifies at the proceeding and is subject to cross-examination about the out-of-court statements.
E.M. testified at trial. Therefore, Crawford, which addressed "[t]estimonial statements of witnesses absent from trial,"541 U.S. at 59, 124 S.Ct. 1354, was not implicated, and King's right to confront and cross-examine his accuser was fully satisfied. Because the provisions of the Child Sexual Abuse Victim Protection Act relevant to this case did not violate the holding of Crawford or the principles of the Confrontation Clause, King's argument is moot, and we need not address the constitutionality of the statute as a whole.
King argues that the Crawford was also violated because the testimony of the child-advocacy workers "went far beyond the scope of the testimony of the alleged victim," and that he could not have cross-examined the victim further without proving the State's case to the jury. (King's brief at p. 33.) Before Denise Houston testified, King objected to any testimony that went beyond the details provided by the victim in her testimony. (R. 155.) The hearsay testimony did not violate Crawford, as we held above. To the extent King argues that his cross-examination of the victim was somehow limited at trial, we find that any limitation was the result of defense counsel's decisions and not the result of any action by the trial court or by the prosecutor. We note, additionally, that the United States Supreme Court has stated the following about the right to effective cross-examination:
 "`"The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination."' [Davis v. Alaska, 415 U.S. 308, 315-16] (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940) (emphasis in original)). Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."
Delaware v. Fensterer, 474 U.S. 15, 19-20, 106 S.Ct. 292,88 L.Ed.2d 15 (1985).
Finally, the State correctly notes in its brief to this Court that King reserved the right to recall E.M. to testify. (R. 155.) He could have cross-examined the victim further after the child-advocacy workers testified, but he chose not to do so.
The principles announced in Crawford v. Washington were not implicated here because the victim testified at trial. Therefore,Crawford does not require a review of the constitutionality of the Child Sexual Abuse Victim Protection Act under the circumstances of this case. The hearsay statements were properly admitted pursuant to §§ 15-25-31 and 15-25-32, Ala. Code 1975. King's argument, that the hearsay statements somehow limited his cross-examination of the victim, is meritless. King is not entitled to relief on any of the Crawford claims.
 II.
King next argues that the trial court erred when it denied his motion in limine and permitted the forensic investigator, Lucy McLean, and the forensic interviewer, Denise Houston, from the Children's Advocacy Center to testify as to the victim's out-of-court statements because that testimony contained more details of the assaults than the victim provided in her testimony. He argues that the witnesses improperly vouched for the victim's credibility and that their testimony constituted improper bolstering of the victim's testimony. He further alleges that the hearsay testimony and the videotape of the victim's investigative interview violated *Page 1038 Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177 (2004).
Initially, we question whether King has preserved for review the allegation that the State's witnesses improperly bolstered the victim's testimony or vouched for her credibility. Although King filed a motion in limine requesting that the court prevent the State from using any of its witnesses to vouch for the credibility of any of its other witnesses (C. 56-57), when the child-advocacy workers who interviewed the victim testified at trial, King argued only that their testimony was inadmissible hearsay and that they should not be permitted to testify to details the victim did not provide in her trial testimony (R. 155-56, 237-38.) The adverse ruling on King's motion in limine did not preserve this specific objection for appellate review; preservation of the issue required a specific objection on these grounds at the time the evidence was introduced. E.g., Moody v.State, 888 So.2d 532, 582 (Ala.Crim.App. 2003).
Even if King had preserved for review his claim that the witnesses improperly bolstered the victim's testimony and vouched for her credibility, he would not be entitled to any relief. As discussed in the preceding part of this opinion, the trial court correctly allowed Houston and McLean to testify about their interviews with the victim; the testimony was admissible pursuant to §§ 15-25-31 and 15-25-32, Ala. Code 1975, and it did not implicate Crawford principles. Furthermore, the State correctly argues that, because King attempted to impeach the victim during cross-examination by asking her about details she had provided during her interviews with Houston, the State was permitted to elicit on cross-examination from Houston the complete details of the victim's prior statements. Strickland v. State,550 So.2d 1042, 1052-53 (Ala.Crim.App. 1988), aff'd, 550 So.2d 1054
(Ala. 1989).
King is not entitled to any relief on these claims of error.
 III.
King next argues that the trial court erred when it limited his right to cross-examine his former wife, Ruth King. Specifically, he argues that he should not have been prohibited from inquiring about Ruth's sexual abuse by her grandfather when she was a child because the information was relevant to show her bias and how it affected her credibility.
Before trial, the State filed a motion in limine requesting that King be prohibited from inquiring of State's witnesses whether they had been victims of sexual assault or sexual abuse, and alleging that such questioning would be irrelevant to the charges involving the minor victim. (C. 114.) At the hearing on the motion, the prosecutor requested that King make an offer of proof outside the jury's presence before attempting to introduce evidence about a witness's alleged prior victimization. King agreed to that stipulation, and the trial court entered an order to that effect. (R. 23, C. 114.)
At trial, on the day after Ruth King had testified, defense counsel stated that, during the previous evening, King had informed him that Ruth had been sexually abused by her grandfather when she was a child. Defense counsel requested permission to recall Ruth and to cross-examine her about the abuse in order to show her possible bias. (R. 350.) The prosecutor objected, stating that Ruth had not provided any testimony about whether King had abused the victim, and that her testimony had been limited to her observations of King's interactions with the victim and to her own sexual experiences with King. The trial court denied defense counsel's request. *Page 1039 
Defense counsel recalled Ruth to the stand, but did not question her about her alleged prior sexual abuse. On appeal, the State argues that, even if the trial court erred in refusing to allow King to cross-examine Ruth about the alleged prior sexual abuse, any error was harmless beyond a reasonable doubt. We agree.
We addressed a similar set of circumstances in Hooper v.State, 585 So.2d 142 (Ala.Crim.App. 1991). Hooper was charged with raping his minor daughter. The trial court refused to allow Hooper to ask on cross-examination of two minor witnesses, friends of his daughter's who testified that the victim reported the abuse to them, whether they previously had been the victims of sexual abuse. Each witness had been sexually abused by someone other than the appellant. We found that, as to at least one of the witnesses, the trial court erred in limiting Hooper's right to cross-examine her about her prior sexual abuse because it would have tended to show possible bias. 585 So.2d at 145-46. However, we found that the error was harmless because the victim had made similar complaints to other witnesses who also testified at trial about the complaints. We explained:
 "Although we are extremely reluctant to hold that any improper limitation of cross-examination constitutes harmless error, we are convinced beyond any reasonable doubt that the error in this case did not contribute to the verdict of the jury. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Violations of the confrontation clause of the Sixth Amendment are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).
 "`[W]e hold that the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to Chapman [v. California, 386 U.S. 18, 87 S.Ct. 824], harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. Those factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.'
"Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438."
Id. at 146.
Ruth King did not testify that E.M. told her about the abuse allegations, nor did she testify that she saw King abuse E.M. She testified, as did King, that E.M. had a close, loving relationship with King and that E.M. and her brother sometimes snuggled in bed with the Kings. Both Ruth and King testified as to E.M. being in the bathroom while King was in the shower, although their testimony differed about whether the water in the shower was on or off. Ruth testified about King's ability to have erections and to ejaculate during the period of time the abuse took place. Although King testified that his abilities were more limited than Ruth testified, even he admitted that he frequently masturbated.
Evidence about King's abuse of E.M. came from E.M., her mother, Lucy McLean, *Page 1040 
and Denise Houston. The State's case against King was strong, even without Ruth's testimony, particularly because Ruth testified that she had not seen any alleged abuse, and she did not testify that E.M. reported the abuse to her. Furthermore, King was otherwise permitted a thorough and sifting cross-examination of Ruth and was even permitted to recall her for additional cross-examination, during which he asked her questions regarding a possible motive to testify falsely. (R. 359.)
Applying the analysis discussed in Hooper, we are confident that any error that resulted from the trial court's limitation of the cross-examination of Ruth was harmless beyond a reasonable doubt. King is not entitled to any relief on this claim.
 IV.
King next argues that the trial court erred when it granted the State's untimely objection to a defense exhibit, his complete medical record, and admitted only those pages of the medical record that had previously been disclosed to the State.
The record reflects that, during King's testimony, defense counsel attempted to introduce as Defendant's Exhibit 1 four pages of King's medical record regarding his treatment for erectile dysfunction. The State objected on grounds that defense counsel had failed to establish the proper foundation for the admission of the records. (R. 305-06.) After much discussion outside the presence of the jury, defense counsel stated that he would, with the court's permission, secure the attendance of the records custodian from the clinic to authenticate "whatever part of this we're going to introduce." (R. 316.) On the following day, the records custodian identified Defendant's Exhibit 1 as copies of King's medical records. (R. 344.) The record was admitted without objection.
During defense counsel's closing argument, the prosecutor objected when she saw defense counsel flipping through more than the four pages of the medical record that had been provided by the defense during discovery. (R. 377.) Defense counsel explained that the records custodian had the complete record, although he had initially intended to introduce only the four pages that were "pertinent." (R. 379.) Defense counsel also said, "We only wanted the things that were pertinent to this issue and [the clinic] sent some more," and that the Exhibit 1 contained "the four pertinent pages that the prosecutor saw, but it also has some other stuff about having the flu and some other things." (R. 383.) Defense counsel argued that the State's objection to the complete medical record was untimely because the complete medical record had already been admitted by the court. The court then determined that defense counsel had provided the State with only four documents and stated that those were the only documents that should have been admitted. Defense counsel then stated, "I don't have a problem with that because nothing else is pertinent to the issues at hand, Judge. I'm objecting to the State bringing up this matter at this point. . . ." (R. 389-90.)
We find no error in the trial court's ruling on this matter. Our review of the entire record convinces us that defense counsel's intent had always been to introduce only four pages of King's medical records. Defense counsel provided only those four pages to the State as compliance with his discovery obligation and he stated on several occasions that only those four pages were pertinent to the issues at hand. The trial court has the discretion to determine the admissibility of evidence offered and to impose any sanctions for violations of discovery orders. *Page 1041 
Rule 16.5, Ala. R.Crim. P., provides in pertinent part:
 "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; may grant a continuance if requested by the aggrieved party; may prohibit the party from introducing evidence not disclosed; or may enter such order as the court deems just under the circumstances."
The trial court determined that defense counsel had offered, and it had admitted into evidence, portions of King's medical record that had not been provided to the State and that defense counsel, himself, acknowledged were not relevant. When the prosecutor became aware that defense counsel in closing argument was referring to more than the four "pertinent" pages that had been disclosed during discovery, the trial court acted well within its discretion when it amended its earlier ruling and admitted only that portion of the record that had been provided to the State. No error occurred, and King is not entitled to any relief on his claim.
For the foregoing reasons, the judgment of the Circuit Court of Madison County is due to be affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
[1] E.M. referred to King as "Grandpa." She called her paternal grandfather "Papa." (R. 119.)