675 So.2d 4 (1993)
Michael Anthony SOCKWELL
v.
STATE.
CR-89-225.
Court of Criminal Appeals of Alabama.
December 30, 1993.
Rehearing Denied March 4, 1994.
*12 David Flack, Montgomery, for appellant.
James H. Evans, Atty. Gen., and Sandra Stewart and Robert Lusk, Jr., Asst. Attys. Gen., for appellee.
MONTIEL, Judge.
The appellant, Michael Anthony Sockwell, was indicted for the murder of Isaiah Harris, made capital because it was committed for pecuniary gain or for valuable consideration or pursuant to a contract or for hire. See § 13A-5-40(7), Code of Alabama 1975. The jury found the appellant guilty of capital murder. By a vote of seven to five, the jury recommended that the appellant be sentenced to life imprisonment without parole. The trial judge overrode the jury's recommendation and sentenced the appellant to death by electrocution.
The facts adduced at trial tend to establish the following. In the late evening hours of March 10, 1988, Isaiah Harris, a deputy sheriff in Montgomery County, Alabama, was shot in the head while he was driving to work. Perry Bullard, a police officer with the Montgomery police department, testified that Harris's vehicle was found on the Troy Highway, at a point across from Cherry Hill Road.
Freddie Patterson testified that he knew the appellant, and the co-defendants Lorenzo (Bo Bo) McCarter and Alex Hood. Patterson testified that during the early part of the day on March 10, 1988, the appellant, Hood, and he drove around and drank beer and that later they went to Hood's house and drank and talked. According to Patterson, after 9:00 p.m. that night, he, the appellant, and Hood went to pick up McCarter at work. Patterson stated that when they arrived, McCarter was talking to someone in another vehicle. McCarter finished talking to the other person and then got into Hood's car. The four went to a store to buy more alcohol and then went to Hood's house for a while, according to Patterson.
Patterson stated that after 10:00 p.m. they left Hood's house and drove out to Troy Highway in Hood's vehicle, which McCarter was driving. Patterson stated that he and Hood rode in the backseat of the vehicle and that the appellant rode in the front seat. Patterson testified that they turned into the *13 Regency Park subdivision and went around a block in that subdivision. According to Patterson, as they passed a certain house on the block with a car in the driveway, someone in the vehicle stated "that's the car." Patterson stated that at that time, the appellant got out of Hood's vehicle carrying a shotgun and some clothes. Patterson further stated that the three remaining in the vehicle drove across the street and parked at an auto parts store facing Cherry Hill Road. Patterson stated that in a few minutes, a pager that was in the car beeped and a voice transmitted over the pager said something to the effect of "He's leaving now." Patterson stated that he then heard a loud noise, after which they left the parking lot of the auto parts store and picked up the appellant, who got into the backseat with a gun and some clothes. Patterson further testified that after the appellant got back into the car, he stated that he "had to shoot him" and that "he was gonna ... get his money." Patterson testified that the four of them drove to a bridge and that the appellant threw the gun and the clothes over the railing of the bridge.
Bruce Huggins, an investigator with the Montgomery County Sheriff's Department testified that he had observed what appeared to be an abandoned vehicle near the scene of the murder and that he determined that the vehicle belonged to Lorenzo McCarter. He was informed that McCarter was having an affair with Isaiah Harris's wife. The State presented evidence that the wife, codefendant Louise Harris, could have received a substantial sum of money in insurance proceeds as a result of Isaiah Harris's death.
Kenneth Gilmore, a friend of the appellant, testified that he and the appellant had made arrangements to go fishing on March 11, 1988, the day after the shooting. Gilmore testified that when he met the appellant that the appellant was with codefendant Hood. He further stated that he went with the appellant and Hood to pick up some money at a house on Pineleaf Street. According to Gilmore, afterwards, the individuals went to a store, where they drank some beer. Gilmore said that, after they left the store and were riding in Hood's car, the appellant said that, "some nigger slapped him and he shot him and blowed half of his face off." The appellant was arrested that day.

I
The appellant contends that the statement he gave to Investigator Huggins was due to be suppressed because, he says, it was the fruit of an illegal arrest and because, he says, it was not voluntary.

A
Specifically, the appellant argues that the police had no probable cause to arrest him without a warrant and, therefore, any statement made by him after the illegal arrest was due to be suppressed. We disagree.
Section 15-10-3(3), Code of Alabama 1975, provides that an officer may arrest an individual without a warrant when a felony has been committed and he has reasonable cause to believe that the individual arrested committed the felony. "Reasonable cause is equated with probable cause." Daniels v. State, 534 So.2d 628, 651 (Ala.Crim. App.1985), aff'd, 534 So.2d 656 (Ala.1986), cert. denied, 479 U.S. 1040, 107 S.Ct. 898, 93 L.Ed.2d 850 (1987); State v. Calhoun, 502 So.2d 795 (Ala.Crim.App.), rev'd in part, 502 So.2d 808 (Ala.1986). Probable cause is knowledge of circumstances that would lead a reasonable person of ordinary caution, acting impartially, to believe that the person arrested is guilty. Harrell v. State, 475 So.2d 650 (Ala.Crim.App.1985). In making the determination as to whether probable cause exists for a warrantless arrest, we must examine the totality of the circumstances surrounding the arrest. Daniels, 534 So.2d at 651.
Investigator Huggins testified at a suppression hearing that at the time of the appellant's arrest he had the following information: that a deputy sheriff had been killed; that McCarter, a codefendant, was having an affair with the victim's wife; that during the months preceding the killing McCarter had been trying to hire someone to kill the victim; that the appellant and codefendant Hood were with McCarter at 5:00 p.m. on the afternoon of the murder; that the appellant, Hood, and McCarter were *14 seen in Hood's automobile on the afternoon of the murder; that a shotgun was used to kill the victim; and that the appellant was known to own and was known to have carried a shotgun with him in Hood's automobile. The day after the murder, the appellant, Hood, and McCarter were seen in Hood's vehicle and Investigator Huggins stopped the vehicle and arrested the individuals in the vehicle.
The knowledge that Investigator Huggins had at the time of the appellant's arrest was sufficient for a reasonable person to believe that the appellant had participated in the murder. Therefore, the warrantless arrest was legal and the statement was not due to be suppressed on the basis that it was the fruit of an illegal arrest.

B
The appellant further argues that his statement was due to be suppressed because, he says, it was not voluntarily given. The appellant acknowledges that he was read his Miranda rights at the time of his arrest. However, he argues that he was coerced into making a statement because, he says, after his arrest he was held at the Montgomery County jail for over six hours, during which time he was not given any food or water, his request for a blanket was denied, and he was threatened by jailers who were friends of the victim when he refused to make a statement. The appellant argues that after he had been held at the county jail for over six hours under these conditions, two investigators approached him and the appellant indicated that he was willing to make a statement. One of the investigators informed the appellant again of his Miranda rights, including his right to an attorney, but neglected to tell the appellant that if he could not afford an attorney, the State would appoint one for him. The appellant said to the investigator, "I shot him." The investigators did not ask him any questions, instructed the appellant not to say anything further, and took him to the investigative division so that the appellant could give his statement to Investigator Huggins.
At this time, Investigator Huggins said that he again advised the appellant of his Miranda rights and that the appellant signed a waiver of rights form. The appellant's statement was videotaped and audiotaped. Huggins testified that the appellant was not coerced or threatened into making the statement and that the appellant did not ask to speak to an attorney and did not request any food or a blanket.
The determination as to whether a statement is voluntary rests within the sound discretion of the trial court and that determination will not be disturbed on appeal unless it is palpably contrary to the great weight of the evidence. Uber v. State, 596 So.2d 608, 612 (Ala.Crim.App.1991); Stariks v. State, 572 So.2d 1301, 1304 (Ala.Crim.App.1990). Whether a statement was voluntary is to be determined under the totality of the circumstances. Rogers v. State, 417 So.2d 241, 248 (Ala.Crim.App.1982) (citations omitted).
The investigators denied that the appellant was mistreated or coerced into making his statement. They also said that the appellant never asked for food or a blanket. Because of the conflicting evidence, we cannot hold that the trial court's determination that the statement was voluntary was contrary to the great weight of the evidence.
Furthermore, we find no error in the trial court's denying the appellant's motion to suppress the statement on the basis that the investigator at the jail failed to inform the appellant of his right to have an appointed attorney. The State correctly asserts in its brief that Ingram v. State, 541 So.2d 78 (Ala.Crim.App.1989), is dispositive of this issue. In Ingram, this Court held that the mere fact that an accused was not advised of the right to appointed counsel immediately before his confession does not render it involuntary. 541 So.2d at 78. It is not necessary to repeat Miranda warnings at the beginning of each interview. Id. The appellant was read his Miranda rights at the scene of his arrest. The evidence presented in this case leads us to conclude that the trial court's determination that the appellant's statement was voluntary was not palpably contrary to the great weight of the evidence.

*15 II
The appellant argues that he was denied the right to an impartial jury because the trial court did not grant a motion for change of venue for the trial, and because, he says, the trial court did not permit defense counsel to question prospective jurors regarding pretrial publicity.

A
The trial court did not err in denying the appellant's motion for a change of venue on the ground of extensive pretrial publicity. "The granting of an accused's motion for a change of venue rests in the sound discretion of the trial court, and its ruling thereon will not be disturbed except for gross abuse." Mullis v. State, 545 So.2d 205, 209 (Ala.Crim.App.1989) (citing Knighten v. State, 507 So.2d 1015, 1021 (Ala.Crim.App. 1986)). Widespread publicity, alone, will not support a change in venue. Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985); Leonard v. State, 551 So.2d 1143, 1149 (Ala.Crim.App.1989).
The appellant must establish that he has been prejudiced by the pretrial publicity by presenting evidence that, given the facts and circumstances, it would be practically impossible to secure an impartial jury. Mullis, 545 So.2d at 208; Kennedy v. State, 472 So.2d 1092, 1095 (Ala.Crim.App.1984), aff'd, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). "The accused must affirmatively show that pretrial publicity has so saturated the community as to have a probable impact on the prospective jurors or that there is a connection between publicity generated and the existence of actual juror prejudice." Mullis, 545 So.2d at 208.
In this case, the veniremembers who indicated that they had read or had heard about the appellant's case from the news media either stated that they could be impartial and base their decision on the evidence presented at trial or were excused by the trial court because they said that they could not lay aside their preformed beliefs. "A qualified juror need not be totally ignorant of the facts in the case." Mullis, 545 So.2d at 209-10 (citing Peoples v. State, 510 So.2d 554, 563 (Ala.Crim.App.1986), aff'd, 510 So.2d 574 (Ala.), cert. denied, 484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266 (1987). We cannot hold the trial court abused its discretion in denying the appellant's motion for a change of venue because the appellant has failed to establish actual prejudice or specific facts and circumstances sufficient to support a change in venue because of an adverse impact on the veniremembers.

B
The trial court did not err in refusing to permit defense counsel to conduct individual voir dire of the veniremembers in regard to pretrial publicity. Whether to allow individual voir dire is a matter left to the sound discretion of the trial court. Hagood v. State, 588 So.2d 526 (Ala.Crim.App.1991); Parker v. State, 587 So.2d 1072 (Ala.Crim. App.1991), after remand, 610 So.2d 1171 (Ala.Crim.App.1992), aff'd 610 So.2d 1181 (Ala.1992), cert. denied, 509 U.S. 929, 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993).
The trial court questioned the veniremembers in regard to any information they may have heard or read about the case as a result of pretrial publicity. Moreover, the trial court inquired of the veniremembers as to whether they had preconceived opinions as to the guilt or innocence of the accused and whether they could lay aside any information regarding the case they had obtained from the news media and make their decision based only on the evidence presented. In this case, there is no indication that the individual voir dire conducted by the trial court was inadequate or that any pretrial publicity prejudiced the jury venire. We cannot hold that the trial court abused its discretion by denying defense counsel the opportunity to conduct individual voir dire in regard to the pretrial publicity. Parker v. State, 587 So.2d 1072 (Ala.Crim.App.1991); see also Kuenzel v. State, 577 So.2d 474 (Ala.Crim.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).

III
The appellant contends that because he was accused of murdering a deputy sheriff, *16 the trial court erred in allowing bailiffs associated with the sheriff's department to remain in the courtroom during his trial. He argues that the presence of the bailiffs denied him a fair trial. The appellant cites Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), in support of his contention. In Turner, two deputy sheriffs who testified for the State served as the jury's escorts. In this case, the record does not reflect that any bailiff was a witness for the State.
In Holloway v. State, 477 So.2d 487, 488 (Ala.Crim.App.1985), overruled on other grounds, Ex parte McCree, 554 So.2d 336 (Ala.1988), this Court stated, "Absent a clear showing that the sheriff or deputies who managed the jury were in fact the same individuals who testified at trial and a showing of some prejudicial injury to the appellant, reversible error will not be found." See also Harris v. State, 632 So.2d 503 (Ala.Crim. App.1992), aff'd, 632 So.2d 543 (Ala.1993). Because the appellant cannot establish that any of the bailiffs who escorted the jury was a witness for the State and that he was prejudiced as a result, we find no error.

IV
The appellant contends that the trial court's alleged errors during the jury selection process require reversal of his conviction.

A
The appellant argues that the trial court erred in refusing to allow adequate voir dire of prospective juror, G.D., or to grant a strike for cause, because, he says, G.D. was a law enforcement officer who said, at the time of trial, that he was investigating another client of the appellant's attorney for alleged criminal misconduct.
During individual voir dire, G.D. acknowledged that he knew one of the appellant's attorneys because as an agent for the United States Treasury Department he was investigating another client of that attorney. Defense counsel, however, argued that G.D. had questioned the attorney's other client about a fee the client had paid to the attorney and about whether the attorney had reported the fee properly to the Internal Revenue Service. In other words, defense counsel argued that he, and not one of his clients, was the subject of G.D.'s investigation and that that fact would influence G.D. However, G.D. told the trial court that any adversarial relationship he had had with defense counsel, which G.D. maintained was through another client, would not affect his ability to render an impartial verdict in the appellant's case. Thereafter, defense counsel did not request further individual voir dire of G.D. and he challenged G.D. for cause.
The trial court did not err in denying the challenge for cause. "To justify a challenge of a juror for cause there must be a statutory ground (Ala.Code Section 12-16-150 (1975)), or some matter which imports absolute bias or favor, and leaves nothing to the discretion of the trial court." Nettles v. State, 435 So.2d 146, 149 (Ala.Crim.App.), aff'd, 435 So.2d 151 (Ala.1983). The fact that an officer investigated another of defense counsel's clients is no statutory ground for eliminating that officer from a jury. When no statutory ground exists to challenge the prospective juror for cause, an absolute bias on the part of the prospective juror must be established. Humphrey v. State, 591 So.2d 583, 585 (Ala.Crim.App.1991).
"`"Ultimately, the test to be applied is whether the juror can set aside [his] opinions and try the case fairly and impartially, according to the law and the evidence. Tidmore v. City of Birmingham, 356 So.2d 231 (Ala.Crim.App.1977), cert. denied, 356 So.2d 234 (Ala.), cert. denied, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 132 (1978); see Willingham v. State, 262 Ala. 550, 80 So.2d 280 (1955); Mahan v. State, 508 So.2d 1180 (Ala.Crim.App.1986). This determination again is to be based on the juror's answers and demeanor and is within the discretion of the trial judge. Thus, a prospective juror should not be disqualified for prejudices or biases if it appears from his or her answers and demeanor that the influence of those prejudices and biases can be eliminated and a verdict rendered according to the evidence."' Mann v. State, 581 So.2d *17 22, 25 (Ala.Crim.App.1991). (Citations omitted.)"
591 So.2d at 585.
The trial court's denial of a challenge for cause should not be reversed unless the answers of the prospective juror, taken as a whole, establish a fixed opinion that would bias his verdict. Perryman v. State, 558 So.2d 972, 977 (Ala.Crim.App.1989). In this case, we cannot hold that the trial court abused its discretion in denying the appellant's challenge for cause in light of the fact that G.D. stated that he was investigating another client of defense counsel and that that investigation would not affect his ability to render a fair and impartial verdict in the appellant's case. The trial judge observed G.D.'s demeanor in responding to voir dire questions and is in the best position to determine whether G.D. could remain impartial. G.D.'s answers, viewed in their entirety, do not indicate that he had a fixed opinion or a bias sufficient to justify a challenge for cause.

B
The appellant contends that the trial court erred in striking potential juror, W.F., for cause. During voir dire, the trial judge asked the veniremembers if they knew of any reason that they could not render a fair and impartial verdict. W.F., in response, stated that he worked for the Capital Representation Resource Center, a group that actively opposes the death penalty and seeks representation of defendants accused of capital crimes. Additionally, during individual voir dire of W.F., he stated that he was opposed to the death penalty and that there were no circumstances under which he could vote to sentence someone to death. W.F. further acknowledged that his opposition to the death penalty would substantially impair his keeping his oath as a juror. In Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), the United States Supreme Court held that the proper standard for determining whether a veniremember may be excluded from the jury for cause because of his opposition to the death penalty is whether the veniremember's views would "`prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" In this case, W.F. clearly responded that his opposition to the death penalty would prevent him from performing his duties as a juror. We find no error in the trial court's granting the State's challenge for cause against W.F.

C
Next, the appellant contends that the trial judge's voir dire questions regarding the veniremembers' views on the death penalty established that he was participating with the State in selecting jurors more prone to convict a capital defendant. We disagree.
As stated in Wainwright, the test for determining whether a potential juror should be excluded for cause based on his views regarding the death penalty is whether those views would prevent or substantially impair the veniremember's performance of his duties according to his instructions and oath. 469 U.S. at 424, 105 S.Ct. at 852. The appellant asserts that the trial judge erred in failing to ask a question he had requested regarding whether the potential jurors would automatically vote for a sentence of death in the event the appellant was found guilty. The appellant's requested voir dire question is not in conformity with the test set forth in Wainwright. We have reviewed the trial judge's voir dire questioning and hold that the questions posed were sufficient to determine whether the veniremembers' views on the death penalty would prevent their rendering a verdict according to their instructions and oaths or substantially impair their ability to render a such verdict.

D
The appellant also contends that the trial court erred in failing to quash the jury venire because, he argues, the prosecutor acknowledged that she had challenged by peremptory strikes those veniremembers who had expressed a hesitancy to impose the death sentence, and thus, he argues, she was seeking a jury more prone to convict a capital defendant. This argument is without merit.
*18 In Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), the Supreme Court held that the Constitution does not prohibit states from "death qualification" of juries in capital cases and that so qualifying a jury does not deprive a defendant of an impartial jury. 476 U.S. at 173, 106 S.Ct. at 1764. Alabama courts have consistently held likewise. See Williams v. State, 556 So.2d 737 (Ala.Crim.App.1986), rev'd in part, 556 So.2d 744 (Ala.1987); Edwards v. State, 515 So.2d 86, 88 (Ala.Crim.App.1987); Martin v. State, 494 So.2d 749 (Ala.Crim.App.1985).
Moreover, it is not improper for a prosecutor to use peremptory challenges to remove veniremembers because they have expressed strong opposition to the death penalty, regardless of whether their opposition would be sufficient to support a challenge for cause. Fisher v. State, 587 So.2d 1027, 1036-37 (Ala.Crim.App.1991), cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992) (citations omitted).
We note that the jury in this case recommended that the appellant be sentenced to life imprisonment without parole; thus, it cannot be said that the jury was "death prone."

E
The appellant argues that "death qualification" of the jury violated the fair cross-section requirement of the Sixth Amendment. This argument lacks merit.
The State, in its brief, correctly cites Ex parte Ford, 515 So.2d 48 (Ala.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988), as dispositive of this issue. In Ford, the Alabama Supreme Court, relying upon Lockhart, held that groups defined solely by a shared attitude, such as opposition to the death penalty, are not "distinctive groups" for fair cross-section purposes. 515 So.2d at 52-53. Therefore, exclusion of veniremembers who have expressed their opposition to the death penalty does not violate the fair cross-section requirement.

F
The appellant also argues that the trial court erred in failing to ask the veniremembers, pursuant to Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), whether they would automatically impose the death penalty if the appellant was found guilty of the crime. As stated, the jury in this case recommended that the appellant be sentenced to life imprisonment without parole. We have held that where a jury recommends life imprisonment without parole, Witherspoon is not applicable. Bracewell v. State, 506 So.2d 354, 358 (Ala. Crim.App.1986); Neelley v. State, 494 So.2d 669, 680 (Ala.Crim.App.1985), aff'd, 494 So.2d 697 (Ala.1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987).

V
The appellant argues that his conviction is due to be reversed, because, he says, the prosecutor exercised her peremptory challenges in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The record indicates that the qualified jury venire consisted of 42 people, 10 (23.8%) of whom were black. The State had 15 peremptory challenges and used 8 of its peremptory challenges to strike black veniremembers. The appellant did not strike any black veniremembers. Thus, 2 black jurors (16.6%) served on the petit jury. The prosecutor used 53.3% of her peremptory challenges to remove 80% of the blacks from the venire.
In Ex parte Branch, 526 So.2d 609 (Ala.1987), the Alabama Supreme Court set forth guidelines for considering a Batson motion. The initial burden is upon the party alleging a discriminatory use of peremptory challenges to establish a prima facie case of discrimination. The following evidence can be used to raise the inference of discrimination: evidence that the blacks strickenother than the fact they were blackwere as heterogenous as the community as a whole; a pattern of strikes against black jurors on a particular venire; the past conduct of the State's attorney in using peremptory challenges to strike all black veniremembers; the *19 questions of the State's attorney during voir dire, including nothing more than desultory voir dire; the questions propounded to the challenged veniremember during voir dire, including a lack of questions or meaningful questions; disparate treatment of white members of the venire with the same characteristics as the challenged black members; and evidence that the State used peremptory challenges to dismiss all or almost all of the blacks from the jury. Id. at 622-23. Once the defendant has established a prima facie case of discrimination, the burden shifts to the State to provide clear, legitimate, race-neutral reasons for peremptory challenges of black veniremembers. Id. The defendant may then offer evidence to establish that the reasons given by the State were pretextual. Id.
In this case, the appellant timely made his Batson motion, but the trial court did not make a finding with regard to whether the appellant had presented a prima facie case of racial discrimination. However, the trial court required the prosecutor to give the reasons for her peremptory challenges. Therefore, this Court will review the sufficiency of the reasons given by the prosecutor for the strikes. Davis v. State, 596 So.2d 626 (Ala.Crim.App.1991); McLeod v. State, 581 So.2d 1144, 1154-55 (Ala.Crim.App.1990); Thomas v. State, 555 So.2d 320, 322 (Ala. Crim.App.1989); Currin v. State, 535 So.2d 221, 223 (Ala.Crim.App.), cert. denied, 535 So.2d 225 (Ala.1988).
Once the trial court requires the prosecutor to justify the peremptory challenges, it does not matter whether the appellant has made a prima facie showing of discrimination. Johnson v. State, 601 So.2d 1147, 1148 (Ala.Crim.App.1992). However, the strength of the prima facie showing is relevant in determining whether the prosecutor's reasons were sufficient to rebut the presumption of racial discrimination. Ex parte Bird, 594 So.2d 676, 680 (Ala.1991). In this case, defense counsel cited the number of the prosecutor's peremptory challenges against black veniremembers and the prosecutor's past practice of challenging black veniremembers in other cases as evidence of racial discrimination.
As a reason for most of her strikes, the prosecutor explained that she believed the challenged veniremembers would be hesitant to impose the death penalty. This is a valid, race-neutral reason for a peremptory challenge. McGahee v. State, 554 So.2d 454 (Ala. Crim.App.), aff'd, 554 So.2d 473 (Ala.1989). Further, we note that the prosecutor also struck white veniremembers who she believed would be hesitant to impose the death penalty.
However, with regard to potential juror E.D., a black male, the prosecutor stated that she struck him because she felt that he did not respond adequately and that he was vague when answering the trial court's questions with regard to the publicity surrounding the appellant's case.
After the prosecutor gave explanations for each of her peremptory challenges, defense counsel questioned the prosecutor with regard to her peremptory challenges in an attempt to establish that the reasons given by the prosecutor were pretextual. With regard to potential juror E.D., the following conversation occurred:
"Q [defense counsel]: Your reasons again for striking [E.D.]?
A [prosecutor]: You want me to repeat them?
Q: Yes, ma'am.
A: Okay, [E.D.], according to my notes, is a black male, approximately 23 years of age, which would put him very close to the same race, sex, and age of the defendant. He said to the Court he had heard a little something. The Court questioned him further and he finally said, `Well, I heard it from the paper, or something.' The Court questioned him further. He was very vague and unclear in his answer. The Court asked him more about it and he said, `Well, some people were talking about it. I didn't actually read it.' He could not remember what had been said nor anything aboutanything further about those. His answers to the death penalty did not give me a lot of clues either way as to how he felt. In fact, I think the words he used were `I could go either way.'"
*20 The prosecutor stated that in addition to the fact that he was the same age and gender as the appellant and his vague responses in regard to pretrial publicity, E.D.'s race was part of the reason for striking him. In Batson, the Supreme Court of the United States held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." 476 U.S. at 89, 106 S.Ct. at 1719 (emphasis added). This Court has held that "simply because race is incidentally mentioned by the prosecutor in his rendition of the reasons for exercising his strikes as he did does not, as a matter of law, establish purposeful discrimination." Owens v. State, 531 So.2d 22, 25 (Ala.Crim.App.1987) (emphasis in original). A trial court's decision with regard to a Batson motion is to be reversed only if the decision is clearly erroneous. Branch, 526 So.2d at 625; Jackson v. State, 594 So.2d 1289 (Ala.Crim.App.1991). Thus, we must determine whether the trial court's decision that the State's reasons for challenging E.D. were racially neutral was clearly erroneous.
Mere allegations that a veniremember is approximately the same age and sex of the appellant, when that fact does not relate to the case to be tried, are not sufficient to rebut the prima facie case of race discrimination established by the appellant. Owens v. State, 531 So.2d 22 (Ala.Crim.App. 1987). In this case, no veniremember was questioned in regard to any age-based biases. Therefore, we cannot hold that E.D.'s age was a legitimate reason for striking him. Additionally, E.D.'s gender was not shown to be an appropriate basis for peremptorily challenging him because the prosecution failed to establish that gender was relevant to the case. We note that the prosecution did not strike white males of a similar age.
However, the prosecutor's belief that E.D. was vague in response to what information about the case and from where he had received information about the case, is a sufficiently race-neutral reason for a peremptory challenge. The fact that E.D. made vague responses during voir dire was an articulate and specific reason for challenging him. Also, the fact that E.D. may have gained information from pretrial publicity related to the facts of the case to be tried is a race-neutral reason for a strike. See Shelton v. State, 521 So.2d 1035 (Ala.Crim.App.1987), cert. denied, 521 So.2d 1038 (Ala.1988). Unlike other veniremembers, E.D. appeared to be less than candid in regard to his exposure to pretrial publicity. Specifically, E.D. first stated that he had read about the case and then stated that he had heard about the case. Nevertheless, E.D. did not state what he had heard, although he was questioned in this regard. Therefore, the State presented a sufficient race-neutral explanation for striking E.D.
Because the prosecutor presented specific and articulate race-neutral explanations for her challenges against the black veniremembers, the trial court's denial of the appellant's Batson motion was not clearly erroneous.

VI
The appellant contends that trial court erred in allowing the State to admit photographs of the victim both before his death and after his death so that the victim's sister could identify the victim for the jury.
The appellant argues that the photographs were irrelevant, immaterial, and were introduced only to inflame and prejudice the jury. The appellant's argument is without merit.
"Generally photographs are admissible into evidence in a criminal prosecution `if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge.' Magwood v. State, 494 So.2d 124, 141 (Ala.Crim.App. 1985), aff'd, 494 So.2d 154 (Ala.1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). See also Woods v. State, 460 So.2d 291 (Ala.Crim.App.1984); Washington v. State, 415 So.2d 1175 (Ala. Crim.App.1982); C. Gamble, McElroy's Alabama Evidence § 207.01(2) (3d ed. 1977). *21 Bankhead v. State, 585 So.2d 97, 109 (Ala. Crim.App.1989), remanded on other grounds, 585 So.2d 112 (Ala.), on remand, 585 So.2d 133 (Ala.Crim.App.1991).
The State had the burden of proving that the person named in the indictment as being the victim of the offense was, in fact, the victim. In this case, any photograph of the victim before he was shot was relevant to establishing the victim's identity. This is especially true in this case because the gunshot wound destroyed facial features. Thus, pictures of the victim before his death were admissible and the trial court did not abuse its discretion in allowing them into evidence.
With regard to photographs of the victim taken after he had been shot, even though they are cumulative and pertain to undisputed matters, generally photographs that depict the external wounds on the body of the victim are admissible. Bankhead, 585 So.2d at 109. As we held in Jenkins v. State, 627 So.2d 1034 (Ala.Crim.App.1992), aff'd 627 So.2d 1054 (Ala.1993), "[t]he state [has] the burden of proving that the victim [is] dead, and [photographs are] direct evidence on that point. Perpetrators of crimes that result in gruesome scenes have reason to expect that photographs of those gruesome scenes will be taken and admitted into evidence." The trial court did not abuse its discretion in admitting photographs of the victim after he had been killed.

VII
The appellant argues that the trial court erred in not granting his motion for a judgment of acquittal because, he says, the State did not present sufficient evidence that the killing was accomplished pursuant to a contract or for pecuniary or other valuable consideration independent of his confession. This argument lacks merit.
"The corpus delicti consists of two elements: `(1) That a certain result has been produced, ... and (2) that some person is criminally responsible for the act.' C. Gamble, McElroy's Alabama Evidence § 304.1 (3d ed. 1977)." Johnson v. State, 473 So.2d 607, 608 (Ala.Crim.App.1985). While it is true that a confession alone may not support a conviction, see, id., at 609, in this case, the State presented sufficient evidence independent of the appellant's confession to support the appellant's conviction for murder for hire or pecuniary gain.
The corpus delicti may be established by circumstantial evidence. Spear v. State, 508 So.2d 306, 308 (Ala.Crim.App. 1987), cert. denied, 537 So.2d 67 (Ala.1988); Johnson, 473 So.2d at 610. The evidence in this case established that the victim's wife, codefendant Louise Harris, stood to gain thousands of dollars in insurance proceeds as a result of her husband's death. This fact was stipulated to by the parties in this case. The appellant argues, however, that there was no independent evidence that he would gain any money or other consideration as a result of the victim's death. However, Patterson testified that after the voice on the pager stated that the victim was leaving and again after the shooting when the appellant returned to Hood's vehicle and said that "he was gonna get his money." Clearly, this circumstantial evidence coupled with the other evidence that McCarter had been trying to hire someone to kill the victim was sufficient to establish that the appellant shot the victim for pecuniary gain.
This evidence warranted the submission of the case to the jury for determination. Thus, the trial court did not err in denying the appellant's motion for a judgment of acquittal.

VIII
The appellant argues that the trial court's guilt-phase jury instructions violated his constitutional rights as set forth in the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and in Article I §§ 1, 6, 12, and 15 of the Alabama Constitution.

A
The appellant contends that the trial court erred in instructing the jury as to the reasonable doubt standard. Specifically, the appellant contends that the trial court's instruction on reasonable doubt permitted the jury to find the appellant guilty based upon a *22 lesser degree of proof, in violation of the Supreme Court's holding in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). We disagree.
The trial court gave the following instruction regarding reasonable doubt:
"In this indictment the official charge is capital murder which includes, by law, the charge of murder. Now the defendant has pled not guilty, and any time a defendant pleads not guilty in a case under our system of criminal justice, the burdenthe responsibility of proving that guiltis placed on the state by and through its representatives from the district attorney's office, and that burden of proof is beyond a reasonable doubt and to a moral certainty. It's important that you try to understand as much as possible what those terms meanbeyond a reasonable doubt and to a moral certaintyfor under our system those terms and what they mean are the measuring stick that you, the jury, are given to take and apply to the evidence to determine whether or not you've been convinced to the measure of proof that the law requires. So let me go over those terms with you and try to, as much as possible, let you glean and grasp an understanding of what they mean.
"The first thing I'd say to you about beyond a reasonable doubt and to a moral certainty is that the terms mean what they saybeyond a reasonable doubt and to a moral certainty. Now, the importance that is attached to them in Court is a lot more important than the way that we may use them in our every day world or life, but basically they mean what they say. A reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence or lack of evidence. While it is rarely possible to prove anything to an absolute certainty, you cannot base any kind of a decision on suspicion or mere conjecture. A reasonable doubt may arise not only from the evidence produced but also from the lack of evidence or any part of the evidence. The burden is on the State to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime that the defendant is charged with. The defendant has the right to rely upon the failure of the prosecution to establish such proof. The defendant may rely upon evidence brought out on cross-examination of witnesses for the prosecution and upon evidence presented on behalf of the defendant himself. The law never imposes upon a defendant in a criminal case the burden or duty of producing any evidence. A reasonable doubt exists in any case when after a careful and impartial consideration of all of the evidence in the case the jurors do not feel convinced to a moral certainty that the defendant is guilty of the charge or any lesser included charge. Upon considering all the evidence or lack of evidence or any part of the evidence, if you have a reasonable doubt about the defendant's guilt arising out of any part of the evidence or lack of evidence then you would have to find the defendant not guilty.
"The doubt which would justify an acquittal must be an actual and substantial doubt. It's not some mere guess or surmise and it's not a forced or capricious doubt. If after considering all the evidence in the case you have an abiding conviction of the truth of the charge then you are convinced beyond a reasonable doubt and it would be your duty to convict the defendant. The reasonable doubt which entitles an accused to an acquittal is not some mere fanciful, vague, conjectural or speculative doubt, but it's a reasonably substantial doubt arising from the evidence or lack of evidence or any part of the evidence and remaining after you've given a careful consideration of the testimony and all of the exhibits such as any reasonable, fair minded, conscientious man or woman would entertain under all the circumstances.
"Now you will observe that it is not the State's burden to prove a defendant's guilt beyond all doubt, but simply beyond all reasonable doubt. Now once again, if after comparing and considering all of the evidence in the case or lack of evidence or any part of the evidence your minds are left in such a condition that you cannot say that you have an abiding conviction to a *23 moral certainty of the truth of the charge then you are not convinced beyond a reasonable doubt and it would be your duty to find the defendant not guilty. A jury is said to be so satisfied when it or its members are satisfied from the evidence that they would beor so satisfied from the evidence that they would be willing to act upon that degree of conviction in matter of highest importance to themselves personally.
"Your decision in this matter is to be one based on the evidence and the evidence alone. We know what the measuring stick is nowbeyond a reasonable doubt and to a moral certainty."
Defense counsel did not object to the trial court's instruction on reasonable doubt and the appellant raises this issue for the first time on this appeal. Therefore, we review this issue pursuant to the plain error rule. Rule 45A, Ala.R.App.P. Plain error occurs only if it is "so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." Ex parte Womack, 435 So.2d 766, 769 (Ala.1983), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983).
In Cage v. Louisiana, the United States Supreme Court found that if the instruction equated "reasonable doubt" to "grave uncertainty" and "actual substantial doubt," and stated that what was required was "moral certainty," a reasonable juror could interpret the instruction to allow a lesser degree of proof to convict than that required by the Due Process Clause. It was the use of all three phrases in conjunction with each other that the Supreme Court determined was unconstitutional in Cage. See Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991).
In construing any of the trial court's instructions, we do so in the context of the charges as a whole. Haney v. State, 603 So.2d 368, 411 (Ala.Crim.App.1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). In this case, the trial court included the phrases "actual and substantial doubt" and "moral certainty" in its charge to the jury regarding reasonable doubt. As this Court stated in Haney, use of some, but not all, of the phrases condemned in Cage does not necessarily constitute reversible error. 603 So.2d at 412. In this case, we find that the charge does not contain the same flaw as that in Cage. The trial court's definition of reasonable doubt correctly conveyed the meaning of the term and did not tend to confuse or mislead the jury. Rather, the trial court's instructions on the presumption of innocence, the burden of proof, and the responsibilities of the jury in weighing the evidence establish that the instructions were proper as to the reasonable doubt standard. See e.g., Haney, 603 So.2d at 412; McMillian v. State, 594 So.2d 1253, 1283 (Ala.Crim. App.1991). We find no plain error in the trial court's instructions in regard to reasonable doubt.

B
The appellant contends that the trial court's instructions permitted the jury to convict him of capital murder regardless of whether the jurors believed that he possessed an intent to kill. Specifically, he contends that the trial court's instructions on accomplice liability and on intent suggested to the jury that it could return a guilty verdict even if it believed that the appellant did not have a particularized intent to kill the victim.
With regard to the particularized intent necessary to find the appellant guilty of the offense charged the trial court stated:

"A defendant commits murder of the intentional killing-type if with the intent to cause the death of another person he causes the death of the person or another person. A person acts intentionally with respect to a result or conduct when his purpose is to cause the result or engage in that conduct. The defendant must intentionally, as opposed to negligently, accidentally, or recklessly, cause the death of the deceased in order to invoke the capital statute. I'll say that once again. The defendant must intentionally, as opposed to negligently, accidentally, or recklessly accidentally, excuse me, or recklessly cause the death of the deceased in order to *24 invoke the capital statute. The intent to kill must be real and specific in order to invoke the capital statute." (Emphasis added.)
In instructing the jury with regard to determining the appellant's guilt or innocence if the jury did not find that the appellant actually committed the shooting, the trial court stated, in relevant part:
"In order to prove a defendant guilty of a particular crime it is not necessarynot necessarily requiredthat the State prove that the defendant himself personally committed the crime. Instead, in certain circumstances the law makes a defendant responsible for the criminal acts of another. More specifically, the law provides that a person is responsible for the criminal acts of another person if the defendant intentionally procured, induced or caused the other person to commit the act, or if the defendant intentionally aided and abetted another person's commission of the act.... If you find that the murder of Isaiah Harris was committed by some person or persons other than the defendant, the defendant would be guilty of that murder if you find beyond a reasonable doubt and to a moral certainty either that the defendant intentionally procured, induced or caused the other person or persons to commit the murder; or that the defendant intentionally aided or abetted the other person or persons in committing the murder.... Likewise, if you find that a murder of the intentional killing-type was committed by some person or persons other than the defendant, the defendant would be guilty of that intentional killing-type of murder if, but only if, you find beyond a reasonable doubt that the defendant intentionally procured, induced or caused the other person or persons to commit the murder, or that the defendant intentionally aided or abetted the other person or persons in the commission of the murder. Only if you are convinced beyond a reasonable doubt that either or both of those situations exist as a fact beyond a reasonable doubt and to a moral certainty can you find the defendant guilty of an intentional killing murder which he did not personally commit or that he did not personally commit himself."
The trial court clearly instructed the jury that the appellant had to possess a particularized intent to kill and it defined an intentional killing. Further, the trial court properly instructed the jury with regard to accomplice liability and aiding and abetting if the jury determined that the appellant did not shoot the victim himself.
The instructions in this case do not contain the same flaw as the instructions in Russaw v. State, 572 So.2d 1288 (Ala.Crim.App.1990), as the appellant argues. In Russaw, the trial court failed to instruct the jury that in the capital offense for robbery-murder, it had to find that the defendant had a particularized intent to kill. Id. at 1289. The trial court in this case plainly charged the jury that it had to find a "real and specific" intent on the part of the appellant in order to invoke the capital statute.
Additionally, we do not find the instructions of the trial court confusing in regard to the doctrine of accomplice liability as we did in Russaw. The trial court properly charged the jury on what it would have to find as to the appellant's intent if it determined that he did not actually shoot the victim.

C
The appellant argues that the trial court's instructions on accomplice liability improperly suggested that he could be found guilty of capital murder even if he did not act for his own pecuniary gain, pursuant to a contract, or for hire. This argument is without merit.
At the outset, we note that the appellant did not object to the trial court's instructions on accomplice liability. Therefore, we review this issue pursuant to the plain error rule. Rule 45A, Ala.R.App.P.
We agree with the State that the § 13A-5-40(7), Code of Alabama 1975, requires proof (1) of an intentional murder, and (2) that the murder was committed for pecuniary gain, pursuant to a contract, or for hire. The statute does not require the State to establish that the appellant, himself, rather than his accomplices, received the pecuniary gain, *25 only that the murder was committed for pecuniary gain. In this case, the parties stipulated that Louise Harris stood to receive thousands of dollars in insurance proceeds as a result of her husband's death.
In this case, as previously stated, there was sufficient evidence to establish that the appellant acted for his own pecuniary benefit. Clearly, the evidence presents a case of murder done pecuniary gain, pursuant to a contract, or for hire. The trial court correctly instructed the jury on accomplice liability. Because the evidence was sufficient for the jury to find that the appellant was an active participant in the murder, either as the "trigger man" or as an accomplice, the jury was entitled to find that the appellant committed the murder for pecuniary gain regardless of whether he actually received remuneration. See Tomlin v. State, 443 So.2d 47, 53 (Ala.Crim.App.1979), aff'd, 443 So.2d 59 (Ala.1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2160, 80 L.Ed.2d 545 (1984), aff'd on return to remand, 516 So.2d 790 (Ala.Crim.App.1986), aff'd, 516 So.2d 797 (Ala.1987), on reh'g, rev'd on other grounds, 540 So.2d 668 (Ala.1988). The trial court's accomplice liability instructions did not rise to the level of plain error.

D
The appellant argues that the trial court did not adequately instruct the jury that it had the option of convicting him of the lesser included offense of murder if it found that the appellant did not kill for pecuniary gain or pursuant to a contract or for hire and that the trial court failed to instruct on the appellant's intoxication as it may have affected his ability to form the specific intent to commit murder. Additionally, the appellant argues that the trial court should have instructed the jury on the lesser included offense of reckless murder pursuant to § 13A-6-2, Code of Alabama 1975. Defense counsel did not object to the trial court's instructions in regard to any lesser included offenses. Thus, we must examine these issues under the plain error rule. Rule 45A, Ala.R.App.P.

D-1
The trial court clearly instructed the jury on the lesser included offense of intentional murder by stating: "A person commits the crime of murder if he causes the death of another person and in performing the act or acts which cause the death he intends to kill that person." The trial court went further and distinguished between capital murder and murder. The trial court defined the intent necessary to commit murder. The trial court properly instructed the jury that it could render one of three possible verdicts: guilty of capital murder, guilty of murder, or not guilty. Viewing the trial court's instructions as a whole, as we are required to do, Ex parte Kennedy, 472 So.2d 1106 (Ala.1985), we find no plain error in the trial court's instruction on murder as a lesser included offense to capital murder in this case.

D-2
The appellant contends that the trial court should have charged the jury as to intoxication as a defense to intentional murder, because, he says, there was evidence that he was intoxicated on the night of the murder and that he was therefore incapable of forming the specific intent required to commit capital murder. Again, because there was no objection on the failure to give such a charge we review this issue under the plain error rule. Rule 45A, Ala.R.App.P.
"`[D]runkenness due to liquor or drugs may render [a] defendant incapable of forming or entertaining a specific intent or some particular mental element that is essential to the crime.' Commentary to Ala.Code 1975, § 13A-3-2." Fletcher v. State, 621 So.2d 1010, 1019 (Ala.Crim.App.1993). Thus, when the crime charged requires specific intent as an element and there is evidence of intoxication, the trial court should instruct the jury on the lesser included offense of manslaughter. Id.; McNeill v. State, 496 So.2d 108, 109 (Ala.Crim.App.1986).
However, a charge on a lesser included offense is not warranted where the lesser included offense is incompatible with the defenses to the case. See, e.g., Gurley v. State, 639 So.2d 557 (Ala.Crim.App.1993) (no *26 plain error in failing to give intoxication instruction where defendant relied on convincing the factfinder that his "intentional decision to defend himself by killing Bentley was justified, rather than on persuading the factfinder that he was unable to form the intent to kill due to intoxication); Lacy v. State, 629 So.2d 688 (Ala.Crim.App.), cert. denied, 629 So.2d 691 (Ala.1993) (self-defense negates argument that accused acted recklessly because he intended to defend himself).
In this case, we hold that there was no plain error in the trial court's failure to charge the jury in regard to the appellant's intoxication. The appellant failed to establish that intoxication rendered him unable to form the necessary intent for murder. Rather, the appellant testified on his own behalf that his codefendant, Lorenzo (Bo Bo) McCarter actually killed the victim. The appellant, during cross-examination, was specific and detailed in regard to what he saw and heard on the night of the shooting. In fact, during cross-examination, the appellant agreed that there was "no doubt in [his] mind about who did what," and further agreed that "alcohol hadn't fuzzed his brain." Clearly, for the appellant to assert that he was intoxicated to the extent that he could not have formed the necessary intent to murder is inconsistent with his defense that someone else committed the murder and that he observed the murder and recalled the specific details surrounding it. Unlike the facts presented in Owen v. State, 611 So.2d 1126 (Ala.Crim.App.1992) (Montiel, J., dissenting), the facts of this case do not warrant an instruction on the effects of intoxication when the accused plainly testifies that alcohol or drugs did not hamper his ability to recall events surrounding the crime or that alleged intoxication did not play a role in the commission of the offense.
Because no objection was raised to the failure to charge on the appellant's intoxication and the appellant's intoxication was incompatible with his defense, we hold that no plain error occurred.

D-3
In a footnote to his supplemental brief the appellant argues that the trial court erred in failing to instruct the jury on reckless murder. § 13A-6-2, Code of Alabama 1975. No objection was raised on this ground and we examine this issue under the plain error rule. Rule 45A, Ala.R.App.P. The trial court's failure to give such an instruction was not plain error.
The evidence presented during the trial clearly does not support a charge on reckless murder. A person commits the crime of reckless murder if "[u]nder circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person." § 13A-6-2(a)(2), Code of Alabama 1975. In Northington v. State, 413 So.2d 1169 (Ala.Crim.App.1981), cert. quashed, 413 So.2d 1172 (Ala.1982), this Court held that a reckless murder charge does not apply where the defendant's acts are directed towards a particular person and no other. In this case, the appellant's acts were specifically directed towards Isaiah Harris and no one else.
Where the evidence does not support an instruction on the lesser included offense of reckless murder, the instruction need not be given. Johnson v. State, 620 So.2d 679 (Ala.Crim.App.1992), rev'd on other grounds, 620 So.2d 709 (Ala.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993). In this case, there is absolutely no evidence to support a finding that the appellant committed reckless murder. See also Harris v. State, 632 So.2d 503 (Ala.Crim.App. 1992), aff'd, 632 So.2d 543 (Ala.1993).

E
The appellant contends that the trial court's instructions permitted the jury to convict him of capital murder without arriving at a unanimous verdict. Specifically, the appellant argues that the different elements of § 13A-5-40(a)(7), Code of Alabama 1975, which make murder a capital offense if the murder is committed for pecuniary gain or other valuable consideration or pursuant to a contract or for hire, permitted the jury to convict him even if the jurors did not agree *27 which element of the statute made the offense a capital one.
First we note that the trial court clearly and thoroughly instructed the jury that its verdict had to be unanimous. Additionally, the trial court's instructions sufficiently tracked the language of § 13A-5-40(a)(7). "Charges which track the language of a Code section are sufficient." Harris v. State, 632 So.2d 503 (Ala.Crim.App.1992), aff'd, 632 So.2d 543 (Ala.1993) (citing Salter v. State, 578 So.2d 1092, 1096 (Ala.Crim.App.1990), writ denied, 578 So.2d 1097 (Ala.1991).
Moreover, in Harris, we addressed this precise issue. Where the indictment charges, in a single count, alternative methods of proving the same crime, it is not duplicitous and does not permit the jury to reach a nonunanimous verdict. 632 So.2d at 514.
"`In effect, the indictment charged, in a single count, alternative methods of proving the same crime. See Sisson v. State, 528 So.2d 1151 (Ala.Crim.App.1987), affirmed, Ex parte State, 528 So.2d 1159 (Ala.1988) ("Section 32-5A-191(a)(1) and (2) are merely two different methods of proving the same offensedriving under the influence.") "When an offense may be committed by different means or with different intents, such means or intents may be alleged in an indictment in the same count in the alternative." Alabama Code 1975, § 15-8-50. Chappell v. State, 52 Ala. 359, 360-61 (1875), held that in an indictment for common law robbery, the taking of the property from the victim may be charged to have been "against his will, by violence to his person" or "by putting him in such fear as [to cause him] unwillingly to part with the same" in different counts or in the same count in the alternative.' Williams v. State, 538 So.2d 1250, 1252 (Ala.Crim.App.1988)."
632 So.2d at 514-15.
We adhere to our holding in Harris that merely giving a charge that includes the different elements that could make a murder capital does not inevitably lead to a nonunanimous verdict and does not render the indictment duplicitous. Therefore, the trial court's instructions on the capital murder statute were proper.

F
The appellant argues that several phrases in the trial court's instructions to the jury require reversal.

F-1
While giving his instructions to the jury, the trial judge stated, "The defendant is guilty of the crime of murderthe reason a defendant is guilty of the crime of murder is because of the act of the principals...." The trial judge rephrased his sentence when describing accomplice liability to the jury to refer to a defendant generally. Viewing the instructions on accomplice liability as a whole, and considering that the trial judge immediately referred to a defendant in general terms in mid-sentence upon noticing a potential problem, we hold that there was no error. The trial judge instantly corrected his error and once completed, the only reasonable construction of the sentence is as a reference to a defendant generally rather than as a statement that the appellant was guilty of the acts of his accomplices.

F-2
The appellant further argues that the trial judge "raised the specter of the `people of the community' and `the State of Alabama' being `figuratively' present in the courtroom, seeking `enforcement of their laws' from the jury," and contends that the trial judge condoned the prosecutor's appeals to the jury in regard to matters having nothing to do with his guilt or innocence. No objection was made with regard to this matter and, thus, we review this issue under the plain error rule. Rule 45A, Ala.R.App.P.
When taken in context, it is clear that the trial judge in the disputed comments was telling the jurors that the appellant's life was at stake and that the State of Alabama required the jurors not to take their task lightly and that in reaching a verdict they must protect the appellant's rights and enforce the laws of Alabama. We hold that when viewed in context, these comments, explaining to the *28 jurors the seriousness of the case, do not rise to the level of plain error.

F-3
The appellant argues that the trial judge improperly urged the jurors to look to God for guidance in reaching their verdict. The trial judge, in his last remarks to the jury, stated:
"My prayer is that the Lord will give each member of this jury an understanding and hearing heart to judge this matter, and I pray that you will be given understanding and wisdom to discern between good and bad and between what is truth and what is not truth so that your judgment and your verdict will speak the truth."
This Court has held that:
"`"Remarks by the trial judge may be open to criticism, but they are not error unless they may have affected the result of the trial.... It is not every erroneous expression of opinion by a trial judge, during trial, that will furnish a ground for reversal. To do so it must, in some manner, influence the result of the cause, or be supposed to do so.... Each case rests upon its own peculiar facts and circumstances." (Citations omitted.)
Morgan v. State, 589 So.2d 1315, 1318-19 (Ala.Crim.App.1991).
We find no harm to the appellant by the trial judge's remarks. Again, when viewed in the entire context in which they were made, the remarks of the trial judge explained to the jurors the importance of their factfinding and their verdict. The trial judge was expressing his desire that the verdict of the jury be a true verdict. The trial judge did not urge the jurors to look to God for guidance in arriving at their verdict as the appellant argues. We cannot find that the jurors were improperly influenced by the trial judge's desire for them to reach a true verdict.

IX
The appellant contends that his sentence is unconstitutional because, he says, the element that made the offense capital,that the murder was done for pecuniary gainis vague, arbitrary, and discriminatory in violation of the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

A
First, the appellant contends that the "pecuniary gain" aggravating circumstance has not been adequately defined. We disagree. In Henderson v. State, 584 So.2d 841, 859 (Ala.Crim.App.1988), remanded on other grounds, 584 So.2d 862 (Ala.), aff'd on remand, 587 So.2d 1071 (Ala.Crim.App.1991), this Court stated that "`pecuniary gain' as used in the language stating the aggravating circumstance, encompasses more than just money and can include anything that results in an economic gain." "Pecuniary gain" is similar to "pecuniary benefit" which is defined as "[b]enefit in the form of money, property, commercial interests or anything else the primary significance of which is economic gain...." Id.; § 13A-10-60(b)(2), Code of Alabama 1975.
Thus, we hold that the Code and Alabama case law adequately define the term "pecuniary gain" as it applies as an element of the capital offense of murder for hire and as an aggravating circumstance in a capital murder case.

B
The appellant also contends that this Court has not determined whether the death penalty is constitutionally applied in a situation where the only aggravating circumstance is that the murder was committed for pecuniary gain.
However, the State, in its brief, correctly notes that in Henderson v. State, supra, the only aggravating circumstance was that the offense was committed for pecuniary gain.[1] Implicit in our holding in Henderson *29 is that the element that a murder was committed for pecuniary gain, is, alone, sufficient to support the death penalty so long as that aggravating circumstance outweighs any mitigating circumstances. In this case, the trial court rejected the jury's recommendation that the appellant be sentenced to life imprisonment without parole. It is apparent that the trial court carefully weighed the aggravating circumstance and the mitigating circumstances in this case. Because we do not believe the trial court abused its discretion in sentencing the appellant, we hold that the trial court constitutionally applied the death penalty where the sole aggravating circumstance was that the murder was committed for pecuniary gain.

C
The appellant also asserts that there was no evidence presented that he would receive any financial benefits as a result of the victim's death; and therefore, he says, the trial court erred in applying the pecuniary gain aggravating circumstance to him. The appellant also argues that the trial court considered the pecuniary benefit that codefendant Louise Harris stood to receive and improperly attributed that benefit to him. We disagree.
As we noted when addressing the appellant's argument concerning the issue of whether the State proved the corpus delicti of the crime, the evidence in this case established that the victim's wife, codefendant Louise Harris, stood to gain thousands of dollars in insurance proceeds as a result of her husband's death. Additionally, Patterson testified that after the shooting, the appellant returned to Hood's vehicle and said that "he was gonna get his money." This evidence, associated with the other evidence that McCarter had been trying to hire someone to kill Harris was sufficient to allow the application of the aggravating circumstance that the murder was committed for the appellant's own pecuniary benefit.
It is apparent that the trial court used the evidence presented in this case that the appellant, himself, stood to derive pecuniary gain for shooting the victim in this case. Therefore, we conclude that the trial court did not rely on the pecuniary gain that codefendant Harris was to receive in applying the aggravating circumstance to the appellant.

D
With regard to the aggravating circumstance that the murder was committed for pecuniary gain, the appellant also contends that it does not pertain to the "hiree" in a murder for hire case, and that, therefore, he argues, the circumstance does not apply to him. This argument is without merit.
In Haney v. State, 603 So.2d 368 (Ala. Crim.App.1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993), we held that in applying the aggravating circumstance that the murder was committed for pecuniary gain to a capital offense the legislature did not intend to distinguish between the "hirer" and the "hiree." In Haney, we held that the hirer was as guilty as the hiree. The reverse is also true. In this case, the pecuniary gain aggravating circumstance applies to the appellantthe hireeequally as it applies to codefendant Harristhe hirer.

X
The appellant next argues that the trial court erred in considering arbitrary factors in overriding the jury's recommendation of life imprisonment without parole and in imposing the death sentence and that the trial court erred in finding that the pecuniary gain aggravating circumstance outweighed the statutory and nonstatutory mitigating circumstances.

A
The appellant contends that the trial court improperly rejected the jury's recommended sentence of life imprisonment without parole. We disagree.
The jury's recommendation must be considered, but it is not binding upon the trial court. § 13A-5-47(e), Code of Alabama 1975. "The trial court and not the jury is the sentencing authority." Freeman v. State, 555 So.2d 196, 213 (Ala.Crim.App.1988), aff'd, 555 So.2d 215 (Ala.1989); see also Harris, 632 So.2d at 538.
*30 The appellant argues that the trial court considered extrajudicial factors from the trial of his codefendant which, he says, is reflected in the sentencing order in his case.[2] Specifically, under the heading "General Findings Concerning the Defendant and the Crime," the sentencing order refers to such things as codefendant Louise Harris's extramarital affair with codefendant Lorenzo McCarter, Louise Harris's lack of concern for her husband when his supervisors called her because he was late for work, Louise Harris's lack of grief when she discovered her husband had been killed, and Louise Harris's admission of the affair with Lorenzo McCarter and her statement that McCarter made love to her like nobody else could. The appellant asserts that because these matters referred to in the trial court's sentencing order were not evidence at his trial, the trial court's decision was based upon arbitrary and capricious factors.
We note that several of the general facts as set forth in the trial court's sentencing order are reasonable inferences from the evidence produced at trial. While some of the factual matters in the trial court's sentencing order were not based upon evidence contained in the record, we hold that error in the trial court's sentencing order is not so egregious as to require a new sentencing order.
The purpose of requiring a trial court to issue a sentencing order in a capital case is to allow an appellate court to review a death sentence. See Fortenberry v. State, 545 So.2d 129, 144 (Ala.Crim.App.1988), aff'd, 545 So.2d 145 (Ala.1989). "`As long as the trial judge properly exercises his discretion and the facts indicating the death penalty are "so clear and convincing that virtually no reasonable person could differ," a harmless error analysis can be used.'" Id. (citations omitted). In this case, there was ample evidence and facts adduced from that evidence in this case that the murder was committed for pecuniary gain, justifying the imposition of a death sentence. Therefore, we must determine whether the trial court's referral to nonrecord evidence was harmless error.
While the trial court refers to some extraneous matters in the sentencing order, it is clear that the trial court considered the statutory and nonstatutory mitigating circumstances in imposing sentence upon the appellant. Additionally, the trial court found only one aggravating circumstancethat the murder was committed for pecuniary gain. The sentencing order reflects that the trial court weighed the mitigating circumstances and the aggravating circumstance and there is no evidence that the trial court failed to consider the mitigating circumstances. The sentencing order does not reflect that the court considered any extraneous matter extraneous matter in imposing sentence against the appellant. Therefore, because the extraneous matters did not affect the trial court's proper weighing of the aggravating and mitigating circumstances, we find that the court's referral to some extraneous matter in its sentencing order was harmless error.

B
The appellant argues that the trial court erred in finding that the pecuniary gain aggravating circumstance outweighed the statutory and nonstatutory mitigating circumstances, because, he says, there was no evidence to establish beyond a reasonable doubt that he would receive pecuniary gain as a result of the victim's death. In Part VII and Part IX.D of this opinion, we addressed the propriety of the finding that the appellant committed this crime for his own pecuniary benefit. Therefore, we find no error in the trial court applying the pecuniary gain aggravating circumstance in this case for purposes of sentencing.

C
The appellant also contends that the trial court specifically found that the appellant was the "trigger man" when this evidence was disputed and when the jury made no such specific finding. The appellant contends that, as a result of this allegedly false *31 assumption, the trial court erred in finding that mitigating circumstances that his participation was minor, that he acted under substantial domination of another, and that his capacity to appreciate the criminality of his conduct were not present.
The trial court's sentencing order was not improper. Pursuant to § 13A-5-47(d), Code of Alabama 1975, the trial judge must review the evidence and is required to "enter written findings of fact summarizing the crime and the defendant's participation in it" when the death penalty is imposed. The trial court's finding that the appellant was the "trigger man," while perhaps based upon disputed evidence and while the jury did not specifically so find, was amply supported by the evidence. "There is no requirement under Alabama's new capital felony statute that the jury make specific findings as to the existence of aggravating circumstances during the sentencing phase of the proceedings. The jury's verdict whether to sentence a defendant to death or to life without parole is advisory only." Bush v. State, 431 So.2d 555, 559 (Ala.Crim.App.1982), aff'd, 431 So.2d 563 (Ala.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). The trial court must issue written findings of fact setting forth its determination of the appellant's sentence. Whisenhant v. State, 482 So.2d 1225, 1239 (Ala.Crim.App.1982), aff'd in part and remanded with directions, 482 So.2d 1241 (Ala.1983).
Assuming that, based upon the evidence, the trial court found as a fact that the appellant was the "trigger man" and used this finding in weighing the aggravating circumstance and the mitigating circumstances, we find no error. The trial court was required to make that finding based upon the evidence presented at trial, and, although the trial court may have determined that the appellant was the "trigger man," it did not determine that being the "trigger man" was an aggravating circumstance. The trial court found that the only aggravating circumstance was that the murder was committed for pecuniary gain.

D
The appellant also contends that the trial court erred in imposing the death penalty because, he says, it did not give adequate weight to the jury's advisory sentence of life imprisonment without parole. This argument lacks merit.
In determining the sentence to be imposed in a capital case, the trial court is to consider the advisory verdict of the jury. § 13A-5-57(e), Code of Alabama 1975. However, the jury's recommendation to the trial court that the appellant should be sentenced to life imprisonment without parole is not binding upon the trial court. Hooks v. State, 534 So.2d 329 (Ala.Crim.App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989); Bush, 431 So.2d at 559. We find no Alabama law that specifies the weight a trial court is to accord to the jury's advisory sentence.[3]
In this case, the trial court, in its sentencing order, clearly stated that it considered the jury's advisory verdict. Because the trial court considered the jury's recommendation, there is no error in this regard.

XI
The appellant argues that his sentence of death is disproportionate to sentences imposed on similar defendants under similar circumstances.
The appellant was eligible to be sentenced to death as a result of his conviction for murder for pecuniary gain. § 13A-5-40(7), Code of Alabama 1975. Additionally, the death penalty has been imposed upon defendants in similar cases. See Parker v. State, *32 587 So.2d 1072 (Ala.Crim.App.1991), after remand, 610 So.2d 1171 (Ala.Crim.App.1992), cert. denied, 509 U.S. 929, 113 S.Ct. 3053, 125 L.Ed.2d 737 (1993); Hubbard v. State, 500 So.2d 1204 (Ala.Crim.App.1986), aff'd, 500 So.2d 1231 (Ala.1986), cert. denied, 502 U.S. 1041, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992). We have recently affirmed the death sentence imposed upon the appellant's codefendant, Louise Harris, who, through codefendant McCarter, hired the appellant to commit the murder. Harris, 632 So.2d at 541. Because there was ample evidence presented that the appellant participated in this crime for his own pecuniary gain and was the "trigger man," we hold that his sentence of death is proportionate to the sentences imposed on his accomplices and the sentences imposed upon others under similar circumstances.

XII
The appellant claims that several errors in the trial court's sentencing considerations and in the trial court's sentencing order require this Court to vacate his death sentence.

A
The appellant argues that the process by which the trial judge overrode the jury's recommendation was arbitrary because, he says, the trial court adopted the State's proposed sentencing order verbatim and, he says, it denied him the right to confront and rebut evidence against him. These arguments lack merit.
In Bell v. State, 593 So.2d 123, 126 (Ala. Crim.App.1991), cert. denied, 504 U.S. 991, 112 S.Ct. 2981, 119 L.Ed.2d 599 (1992), this Court stated:
"While the practice of adopting the state's proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Hubbard v. State, 584 So.2d 895 (Ala.Crim.App.1991); Weeks v. State, 568 So.2d 864 (Ala.Crim.App.1989), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435 (Ala.Crim.App.1989), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990)."
Here, the trial court, when it adopted the State's proposed order, stated that the contents of the order accurately reflected the court's findings and conclusions. Additionally, we find that the majority of the findings and conclusions are based upon the evidence presented during the trial and the sentencing hearing. The appellant was given the opportunity to present evidence and testimony at the sentencing hearing, and thus, he had opportunity to confront and to rebut the evidence against him. The fact that the State's attorney proposed and drafted the trial court's order does not indicate that the trial court arrived at the appellant's sentence in an arbitrary manner. Any extraneous matter referred to in the sentencing order did not pertain to the weighing of the aggravating and mitigating circumstances, as we addressed in Part X.A. of this opinion and, thus, was not error. Therefore, although we do not condone the practice of adopting the State's proposed order verbatim, we cannot hold that the trial court's action was clearly erroneous.

B
The appellant argues that the trial judge was without jurisdictional authority to enter his written findings and sentencing order because, he says, when the trial court did so his case was already on appeal to this Court.
On March 2, 1990, the trial court conducted a sentencing hearing, during which evidence and arguments by counsel were presented. At the close of the sentencing hearing, the trial court orally sentenced the appellant to death. At that time, the trial court did not enter written findings in regard to the appellant's sentence. On November 13, 1990, after the record on appeal had been filed, but prior to the submission of briefs, the State filed a proposed sentencing order with the trial court and served copies of the proposed order on defense counsel. On November 16, 1990, defense counsel objected to the proposed sentencing *33 order on the basis that the trial court did not have jurisdiction to enter a sentencing order at that time. On February 28, 1991, after a hearing, the trial court granted the State's Rule 10(f), Ala.R.App.P., motion to supplement the record on appeal so that the record would contain the trial court's written findings and sentencing order. As of February 28, 1991, the appellant's brief was not due. We hold that the trial court had jurisdiction to supplement the record in this case, under Rule 10(g), rather than Rule 10(f), Ala.R.App.P., which provides that the appellee may timely file a motion to supplement the record with the trial court within 14 days after the appellant's brief has been submitted.
The appellant argues that the process by which the trial court's written findings were submitted to this Court through supplementation establishes that the trial court sentenced him to death in an arbitrary manner. However, if the trial court had failed to enter written findings with regard to the appellant's sentence, this Court would have remanded the appellant's case to the trial court for the trial court to enter written findings in regard to the appellant's sentence. A new sentence hearing would not have been required. Therefore, we find that the error of failing to submit the written findings before the record on appeal was completed was harmless.

C
The appellant further argues that the trial court refused to allow him to present mitigating evidence of his good behavior while he was in jail. We disagree.
During the sentencing phase of the trial, the defense presented the testimony of Lee Green, Jr., the chief jailor of prison facility in Dallas County, where the appellant was held while awaiting his trial. Green testified that the appellant presented no discipline problems while he had been incarcerated. Clearly, the appellant was permitted and did present mitigating evidence of his good behavior while he was in jail. The appellant's argument that he was entitled to present additional evidence at the hearing on the motion to supplement the record is without merit.

D
The appellant argues that the trial court failed to consider nonstatutory mitigating evidence of his intoxication from alcohol at the time of the offense, his history of alcoholism, and his low level of intelligence, in violation of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
The record reveals that the trial court considered mitigating evidence presented by the appellant. "While Lockett and its progeny require consideration of all evidence submitted as mitigation, whether the evidence is actually found to be mitigating is in the discretion of the sentencing authority." Bankhead v. State, 585 So.2d 97 (Ala.Crim. App.1989), aff'd, 585 So.2d 112 (Ala.1991); see also Ex parte Hart, 612 So.2d 536, 542 (Ala.1992), cert. denied, 508 U.S. 953, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993). "The trial court is not required to find the existence of a mitigating circumstance simply because the accused proffers evidence of a mitigating circumstance." Johnson, 620 So.2d at 705 (citations omitted).
The trial court considered the mitigating evidence offered on behalf of the appellant but concluded that the mitigating circumstances were outweighed by the aggravating circumstance that the murder was committed for pecuniary gain.

E
The appellant argues that the trial court "directed a verdict" for the State by finding in its sentencing order that the pecuniary gain aggravating circumstance existed, although the jury did not necessarily decide this issue at the guilt phase. The appellant argues that the jury could have found him guilty of murder pursuant to a contract, and further argues that the word "contract" does not necessarily mean that the murder was committed for pecuniary gain or consideration; therefore, he argues, the pecuniary gain aggravating circumstance does not automatically apply in his case. This argument is without merit and distorts the plain meaning of § 13A-5-40(7), Code of Alabama 1975.
*34 Section 13A-5-40(7), Code of Alabama, 1975, makes "murder done for a pecuniary or other valuable consideration or pursuant to a contract or for hire" a capital offense. Clearly, the legislature intended the term "pursuant to a contract" to define the manner in which a murder for hire situation arises. Additionally, the word "contract" connotes some form of consideration, for example, pecuniary gain. In Harris v. State, the indictment charged the defendant with murder for pecuniary or other valuable consideration or pursuant to a contract or for hire in the same manner as the indictment in this case charges the appellant. Nevertheless, this Court found no plain error in automatically applying the pecuniary gain aggravating circumstance in that case. See also Lundy v. State, 539 So.2d 322 (Ala.1988). Thus, the Alabama courts have implicitly recognized that the term "pursuant to a contract" as used in § 13A-5-40(7) intends that pecuniary gain is to be had as a result of the murder.
Because the appellant was found guilty of capital murder either as a result of murder for pecuniary gain or other valuable consideration or pursuant to a contract or for hire, the pecuniary gain aggravating circumstance was established as a matter of law and automatically applies in sentencing considerations. Henderson v. State, 584 So.2d 841 (Ala.Crim.App.1988).

XIII
The appellant argues that the prosecutor engaged in misconduct during the guilt phase and the penalty phase of his trial thereby denying him the right to a fair trial, and that, therefore, his conviction and sentence must be reversed.

A
The appellant asserts that the prosecutor argued and attempted to elicit inculpatory out-of-court statements made by his codefendants who did not testify, which denied him the right to a fair trial. Codefendants McCarter, Hood, and Harris did not testify during the appellant's trial. However, during cross-examination of the appellant and during closing arguments, the prosecutor alluded to the substance of statements made by the codefendants to the investigators.
The following transpired during closing argument at the guilt phase of the trial:
"[By Ms. Brooks, prosecutor] ... Ladies and gentlemen, the testimony is uncontradicted that on the nightthe day he was arrested, Lorenzo McCarter gave a statement to law enforcement officials. It is uncontradicted that Lorenzo McCarter said the shooter was Michael Sockwell. March 11, 1988, his statement.
"MR. WISE [defense counsel]: Your Honor, I object. There's been no testimony from Lorenzo McCarter.
"MS. BROOKS: No need for any testimony.
"THE COURT: Sustained.
"MS. BROOKS: Is there? It's uncontradicted what he said.
"MR. WISE: Your Honor, I ask the Court to instruct the jury to disregard it.
"THE COURT: Sustained.
"MS. BROOKS: And Mr. Wise is upset
"THE COURT: Sustained.
"MS. BROOKS: Excuse me, Judge.
"THE COURT: Jury will disregard anything about the times you said it."
After reviewing the record, we find that when defense counsel objected to the prosecutor's improper conduct, the trial court sustained the objection and instructed the jury to disregard the prosecutor's references.
In Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Supreme Court held that where a codefendant refuses to testify, the prosecutor's references to the substance of the codefendant's inculpatory statement given to the police violates the defendant's Sixth Amendment right to confront witnesses against him. However, violations of the Confrontation Clause of the Sixth Amendment are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); see also Busby v. State, 412 So.2d 837 (Ala.Crim.App.1982). "The correct inquiry is whether, assuming that the damaging potential of the ... [statement] were fully realized, a reviewing court might nonetheless say that *35 the error was harmless beyond a reasonable doubt." Hooper v. State, 585 So.2d 142, 146 (Ala.Crim.App.1991), cert. denied, 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 517 (1992) (quoting Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438). The inquiry is conducted on a case-by-case basis, to determine whether, in light of all of the surrounding circumstances, harmless error occurred. Busby, 412 So.2d at 843.
In this case, ample evidence was presented to show that the appellant was the shooter. Patterson testified that the appellant was the shooter. The appellant was known to be carrying a shotgun in Hood's vehicle. Gilmore testified that the appellant told him that he shot someone in the face. Additionally, the appellant, in his statement to Investigator Huggins, stated that he shot the victim. Thus, in light of the overwhelming evidence and in light of the instruction that the trial judge gave to the jury when defense counsel objected, the prosecutor's argument to the jury during closing argument that Hood and McCarter stated to the police that the appellant was the shooter was harmless error.

B
The appellant contends that the prosecutor, during rebuttal argument at the guilt stage, urged the jurors to ignore the reasonable doubt standard. The prosecutor made the following remarks during her closing arguments:
"[R]easonable doubt, that's something that is common with defense attorneys. Reasonable doubt is the same in this case as in all criminal cases of anybody who has ever gone to prison. Anybody convicted of murder, capital murder, has had that same benefit of reasonable doubt. It's not beyond all doubt but merely beyond a reasonable doubt. Don't be frightened away by thinking well, my goodness, how can I know for sure. You know unless God comes down here and says this is what happened we must rely on our common sense on circumstances, on witnesses, on material exhibits, photographs, and use your good sense in weighing this evidence."
The appellant argues that these remarks implied that because defense counsel in other cases reminded the jurors of the reasonable doubt standard and the defendants in other cases were found guilty, that the appellant must be guilty because defense counsel in his case reminded the jurors of the reasonable doubt standard. This argument is without merit.
At the outset, we note that defense counsel did not object to these remarks. Therefore, we decide this issue under the plain error rule. See Rule 45A, Ala.R.App. P.; Kuenzel v. State, While failing to object does not preclude our review of the alleged error in a capital case, it does weigh against any alleged harm that the appellant may have suffered. Williams v. State, 601 So.2d 1062 (Ala.Crim.App.1991).
During closing arguments before the prosecution's rebuttal, defense counsel argued to the jury that the State had to prove the appellant's guilt beyond a reasonable doubt, which was a "high burden." The prosecutor's remarks must be examined in light of the circumstances or in the context in which they were made. Johnson v. State, 620 So.2d 679 (Ala.Crim.App.1992). The comments made by the prosecutor in rebuttal were replies to the remark made by defense counsel that the reasonable doubt standard was a "high burden." Statements made during closing arguments which are in reply to arguments made by opposing counsel are not grounds for reversal. Stephens v. State, 580 So.2d 11 (Ala.Crim.App.1990), aff'd, 580 So.2d 26 (Ala.1991), cert. denied, 502 U.S. 859, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991). Therefore, we hold that no plain error occurred.

C
The appellant argues that the prosecutor, during rebuttal at the guilt phase, improperly urged the jurors to "send a message" to the people in the county and the state by convicting him. The following transpired:
"Send a message. Michael Sockwell, we find you guilty. We do not buy your lies. The evidence is overwhelming against you *36 and we will not allow people in our county to take $50 and a hope for more to blow away [the] Isaiah Harris[es] of this world. This is a county and country of law and order. We need you to enforce our laws. Without you we can do nothing about these kinds of cases.
In Henderson, 584 So.2d at 858, this Court upheld the prosecution's right to make a general appeal for law enforcement. An abundance of case law exists holding that urging the jury to render a verdict in such a manner as to punish crime, protect the public from similar offenses, and deter others from committing similar offenses is not improper argument. See Ex parte Waldrop, 459 So.2d 959, 962 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Kinder, 515 So.2d at 68; Orr v. State, 462 So.2d 1013, 1016 (Ala.Crim.App.1984).
The prosecutor's remarks in this case were clearly an appeal for law enforcement when viewed in the context in which they were made. Therefore, the remarks were not improper.

D
The appellant contends that the prosecutor introduced inadmissible evidence of the his prior bad acts to the jury and the trial court at the sentence phase of the trial and urged the jury and trial court to sentence the appellant to death on the basis of the inadmissible evidence as a nonstatutory aggravating circumstances. Additionally, the appellant argues that the prosecutor urged the trial court to consider the evidence presented in codefendant Louise Harris's case to override the jury's recommendation and sentence the appellant to death. The appellant contends that this alleged prosecutorial misconduct requires reversal of his sentence. The appellant's arguments lack merit.
With regard to any alleged error at the penalty phase and its affect upon the jury, we hold that the error, if any, was harmless because the jury returned a recommendation that the appellant be sentenced to life without parole. Likewise, any evidence presented to the trial court by the prosecution regarding the appellant's prior bad acts amounted to harmless error, if any. Again, the trial court found that the only aggravating circumstance was that the murder was committed for pecuniary gain. Additionally, the trial court found that the appellant had no significant prior criminal history and considered this mitigating circumstance in determining the appellant's sentence. Clearly, the trial court weighed the aggravating circumstance and mitigating circumstances in determining that the appellant should be sentenced to death.
No prior bad acts of the appellant are referred to in the trial court's sentencing order and any references to facts presented in Louise Harris's case were not a part of the trial court's weighing the aggravating circumstance and the mitigating circumstances established in the appellant's case.
Therefore, because the sentencing order reflects proper weighing of the aggravating circumstance and the mitigating circumstances, we apply the doctrine that the trial judge is presumed to disregard any inadmissible evidence and improper factors in sentencing. See Lightbourne v. Dugger, 829 F.2d 1012 (11th Cir.1987), cert. denied, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); Whisenhant v. State, 555 So.2d 219, 229 (Ala.Crim.App.1988), aff'd, 555 So.2d 235 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990). Cf. Haney v. State, 603 So.2d 368 (Ala.Crim.App. 1991), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993) (The trial court acknowledge in its finding that it carefully considered a presentence report which contained a substantial victim impact statement that had been previously ruled inadmissible). In this case, the record does not reflect that prosecutorial misconduct, if any, influenced the trial court's sentencing decision.

XIV
The appellant argues that the trial court erred in failing to inquire further into a potential conflict of interest that defense counsel may have had in representing him, in violation of the United States Constitution and the Constitution of Alabama, and, thus, his conviction must be reversed.
*37 After the jury had returned a verdict finding the appellant guilty of capital murder but before the sentencing phase of the trial began, the following transpired:
"MR. WOOD [defense counsel]: ... I was advised this morning, as your Honor knows, my law firm has a lawyer in it named Charles N. Parnell [III]. My secretary advised me this morning that Charles N. Parnell [III], on behalf of Baptist Hospital, has sued Michael Sockwell on two occasions and that there are active files in my office where he is a defendant. I did not know about either of these until today and I wanted to make the Court aware of it. Of course, Sockwell has not been made aware of it until now. I don't know of any basis for my having told him earlier, but those matters exist and out of an abundance of caution I bring it to the Court's attention.
"THE COURT: I see no problem in it at this stage. Anything else?"
Defense counsel did not learn of the potential conflict until after the jury had returned its verdict. Because defense counsel did not know that a potential conflict existed the trial court was permitted to assume that defense counsel adequately represented the appellant's interests during the guilt phase of the trial. See Cuyler v. Sullivan, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980).
Moreover, "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must show that an actual conflict of interest adversely affected his lawyers performance." Id. at 350, 100 S.Ct. at 1719. "An actual conflict of interest exists when an attorney owes loyalty to a client whose interests are adverse to another client." Self v. State, 564 So.2d 1023, 1033 (Ala.Crim.App. 1989), cert. quashed, 564 So.2d 1035 (Ala. 1990).
While it may be that defense counsel's law partner represented Baptist Hospital in a civil matter against the appellant, we hold that, under the circumstances of this case, an actual conflict of interest did not exist at the time of defense counsel's representation of the appellant. The appellant's interests during the trial were not adverse to Baptist Hospital's interests. The appellant's interests were to be found not guilty, and, if found guilty to be given the smallest sentence. Baptist Hospital's interests were apparently financialto collect a money judgment from the appellant. Baptist Hospital's interests would not likely be served if the appellant were convicted because any judgment could not be collected while the appellant is in prison or sentenced to death upon a guilty verdict. The possibility of a conflict is not sufficient to set aside a criminal conviction.
The interests of the appellant and the interests of Baptist Hospital cannot be shown to be adverse to the detriment of the appellant. The appellant argues that prejudice is to be presumed in this case. However, prejudice is presumed when an actual conflict is shown. Cuyler, 446 U.S. at 349-50, 100 S.Ct. at 1719. Browning v. State, 607 So.2d 339, 342 (Ala.Crim.App.1992). Because no actual conflict of interests existed in this case, prejudice is not presumed.
In this case, the appellant cannot demonstrate any prejudice to him as a result of the fact that defense counsel's law partner represented Baptist Hospital. Defense counsel did not know of his law partner's representation until after the jury had found the appellant guilty of capital murder. Additionally, the appellant cannot establish by any evidence that his attorney's performance was adversely affected. The appellant must make a factual showing that his attorney "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." Self, 564 So.2d at 1033 (citations omitted.)
Therefore, the appellant was not denied effective assistance of counsel or a fair trial because of an alleged conflict of interest.

XV
In accordance with § 13A-5-53, Code of Alabama 1975, we have reviewed the record, including the pretrial, guilt, and sentencing proceedings, for any error that adversely affected the rights of the appellant. Although the record seems to reflect that the *38 appellant was not personally present during all pretrial proceedings, a majority of this Court has held that an accused's absence at pretrial proceedings does not constitute reversible error absent a showing of prejudice to the accused. Harris, 632 at 544 (Montiel, J., dissenting). The Alabama Supreme Court, in affirming this Court's opinion in Harris, stated:
"We do note, however, the issue on which Judge Montiel dissentswhether Harris had an absolute right to be present at `all pretrial proceedings relating to [her] case' (i.e., proceedings involving questions of law, questions of procedure, or questions regarding the removal of Harris's counsel), pursuant to the guarantees of the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment of the United States Constitution and because every criminal defendant, particularly a defendant in a capital murder case, has the fundamental right to participate in the preparation of her defense. Suffice it to say, without further discussion, that after thoroughly reviewing the record and the applicable law, we are satisfied that the Court of Criminal Appeals adequately addressed and correctly resolved this issue."
Ex parte Harris, 632 So.2d 543, 544 (Ala. 1993). Therefore, although the Alabama Supreme Court appears to acknowledge the fundamental right of an accused to be present at pretrial proceedings, the Court's discussion of the issue, quoted above, indicates that the defendant must show that he was prejudiced as a result of a violation of that fundamental right. Thus, even under the Alabama Supreme Court's analysis of the issue, this Court cannot hold that the appellant's absence from pretrial proceedings in his case rises to the level of plain error.
Further, we find no evidence that the sentence was imposed under any bias, passion, prejudice, or any other arbitrary factor. The trial court properly found the existence of one aggravating circumstance, that the murder was committed for pecuniary gain. The trial court adequately addressed the mitigating circumstances, and did not err in finding that the only statutory mitigating circumstance that was present was that the appellant had no significant prior criminal history. Ala.Code, § 13A-5-51(1). The trial court noted that it considered all of the evidence in which defense counsel presented nonstatutory mitigating circumstances.
The trial court's order reflects that it carefully considered and weighed the aggravating circumstance and the evidence offered in mitigation. After an independent weighing of the aggravating circumstance and the mitigating circumstances presented in this case, we hold that the evidence supports the trial court's order and indicates that the appellant's death sentence was proper. The sentence imposed upon the appellant in this case is not disproportionate to the sentences imposed in similar cases when both the crime and the defendant are considered. Thus, we find no plain error and the appellant's conviction and sentence are proper. The judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.
NOTES
[1] In Henderson, we noted that when the trial court was instructing the jury as to the weighing process at the sentencing phase, the "trial court then instructed the jury as to the one aggravating circumstance, that the capital offense was committed for pecuniary gain...."
[2] The circuit court judge who presided over the appellant's trial also presided over codefendant Louise Harris's trial.
[3] The appellant urges this Court to adopt the Florida standard set forth in Tedder v. State, 322 So.2d 908, 910 (Fla.1975), holding that a jury's recommendation of life imprisonment without parole may be rejected only if the facts suggesting a death sentence are "so clear and convincing that no reasonable person could differ." However, the United States Supreme Court has clearly held that the nonbinding advisory verdict system is constitutional. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Thus, we have declined to adopt the Tedder standard. See, e.g., Harris v. State, 632 So.2d 503 (Ala.Crim.App.1992); Murry v. State, 455 So.2d 53 (Ala.Crim.App.1983).